[Cite as *State v. Evans-Goode*, 2016-Ohio-5361.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA10 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| SUSAN EVANS-GOODE, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 08/08/16** |

_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Eric M. Hedrick, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Colleen S. Williams, Meigs County Prosecutor, and Jeremy L. Fisher, Assistant County Prosecutor, Pomeroy, Ohio, for Appellee.

_____

McFarland, J.

{¶1} Susan Evans-Goode appeals her convictions and sentences in the Meigs County Court of Common Pleas after a jury found her guilty of one count of illegal manufacture of methamphetamine, a second degree felony in violation of R.C. 2925.04(A), and illegal assembly or possession of chemicals for the manufacture of methamphetamine, a third degree felony in violation of R.C. 2925.041(A). On appeal, Appellant contends that 1) she was denied her right to due process and a fair trial when the jury found her guilty of illegal assembly or possession of chemicals for the manufacture of

methamphetamine when there was not sufficient evidence presented to sustain a conviction; and 2) the trial court erred in violation of her rights under the Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution, Article I, Section 10 of the Ohio Constitution, and R.C. 2941.25, when it failed to merge for sentencing offenses that had a similar import, arose from the same conduct, and were not committed separately or with a separate animus. Upon review, we find no merit to Appellant's arguments. Accordingly, we overrule both of her assignments of error and affirm the judgment of the trial court.

## FACTS

{¶2} Appellant Susan Evans-Goode was indicted on one count of illegal manufacture of methamphetamine, a second degree felony in violation of R.C. 2925.04(A), and one count of illegal assembly or possession of chemicals for the manufacture of methamphetamine, a third degree felony in violation of R.C. 2925.041(A). The indictment arose from activities which occurred on or about January 21, 2015, when officers arrived at 22688 Bucktown Road, Racine, Ohio, to conduct a "knock and talk," which eventually led to obtaining and executing a search warrant. The search warrant led to the identification of various items used in the production of methamphetamine, as well as an active one-pot meth lab in

Appellant's vehicle, which was parked on the premises. Although the residence was owned by Terri Carmichael, the record indicates that Appellant had been living at the residence for approximately one month on the day the search warrant was executed. Appellant's boyfriend, Mark Russell, was also present at the residence that day, but was not living there at the time.

{¶3} Appellant was tried before a jury on June 30, 2015. The State presented testimony from the following individuals: Ronald Duvall, a pharmacist employed at Rite-Aid Pharmacy in Pomeroy, Ohio; Stanton Wheasler, a forensic scientist employed by the Ohio Bureau of Criminal Identification and Investigation (BCI); Sergeant Robert "Adam" Smith of the Meigs County Sheriff's Department; and Terri Carmichael, Appellant's co-defendant. Appellant did not present any witnesses in her defense.

{¶4} The jury ultimately found Appellant guilty of both charges contained in the indictment. The trial court subsequently sentenced Appellant to prison terms on each conviction, to be served consecutively, for a total term of eleven years. It is from this order that Appellant now appeals her convictions and sentences, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.     SUSAN G. EVANS WAS DENIED HER RIGHT TO DUE
        PROCESS AND A FAIR TRIAL WHEN THE JURY FOUND HER
        GUILTY OF ILLEGAL ASSEMBLY OR POSSESSION OF
        CHEMICALS FOR MANUFACTURE OF METHAMPHETAMINE
        WHEN THERE WAS NOT SUFFICIENT EVIDENCE
        PRESENTED TO SUSTAIN A CONVICTION.  FIFTH AND
        FOURTEENTH AMENDMENTS, UNITED STATES
        CONSTITUTION; ARTICLE I, SECTION 16, OHIO
        CONSTITUTION.

II.     THE TRIAL COURT ERRED IN VIOLATION OF MS. EVANS'
        RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE
        FIFTH AMENDMENT TO THE U.S. CONSTITUTION, ARTICLE
        I, SECTION 10 OF THE OHIO CONSTITUTION, AND R.C.
        2941.25, WHEN IT FAILED TO MERGE FOR SENTENCING
        OFFENSES THAT HAD A SIMILAR IMPORT, AROSE FROM
        THE SAME CONDUCT, AND WERE NOT COMMITTED
        SEPARATELY OR WITH A SEPARATE ANIMUS."

ASSIGNMENT OF ERROR I

{¶5} In her first assignment of error, Appellant contends that her

convictions were not supported by sufficient evidence.  A claim of

insufficient evidence invokes a due process concern and raises the question

whether the evidence is legally sufficient to support the verdict as a matter of

law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

When reviewing the sufficiency of the evidence, our inquiry focuses

primarily upon the adequacy of the evidence; that is, whether the evidence,

if believed, reasonably could support a finding of guilt beyond a reasonable

doubt. *Thompkins*, syllabus.  The standard of review is whether, after

viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390 (Cook, J., concurring).

{¶6} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶7} R.C. 2925.04(A) states: "No person shall knowingly * * * manufacture or otherwise engage in any part of the production of a controlled substance." Thus, in order to sustain appellant's conviction, the greater weight of the evidence must show that Appellant (1) knowingly (2)

manufactured or (3) otherwise engaged in the production of (4) a controlled substance, i.e., methamphetamine. R.C. 2925.041(A) states: "No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."

{¶8} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "With regard to the ability to prove an offender's intentions, the Ohio Supreme Court has recognized that 'intent, lying as it does within the privacy of a person's own thoughts, is not susceptible [to] objective proof.' " *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 41; quoting *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). Thus, "whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances * * *." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.2001).

{¶9} " 'Manufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production." R.C. 2925.01(J).  Further, "the [S]tate is not required to prove that [A]ppellant is the individual who assembled all of the materials[,] but rather need "only prove that [A]ppellant engaged in any part of the production of methamphetamine, which includes extraction and other activities incident to production." *State v. Wickersham*, 4th Dist. Meigs No. 13CA10, 2015-Ohio-2756, ¶ 37.

{¶10} " '[P]ossession' is defined as 'having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found.' " *State v. Gavin*, 4th Dist. Scioto No. 13CA3592, 2015-Ohio-2996 ¶ 35; citing R.C. 2925.01(K).  "Possession may be actual or constructive." *Gavin*; quoting *State v. Moon*, 4th Dist. Adams No. 08CA875, 2009-Ohio-4830, ¶ 19; citing *State v. Butler*, 42 Ohio St.3d 174, 175, 538 N.E.2d 98 (1989) ("[t]o constitute possession, it is sufficient that the defendant has constructive possession").

{¶11} " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *Gavin* at ¶ 36; *State v. Kingsland*, 177 Ohio App.3d 655, 2008-Ohio-4148, 895 N.E.2d 633, ¶ 13 (4th Dist.; quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 39. "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *Gavin, supra*; quoting *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus (1982); *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009-Ohio-5390, ¶ 19. For constructive possession to exist, the State must show that the defendant was conscious of the object's presence. *Gavin, supra*; *Hankerson* at 91; *Kingsland* at ¶ 13. Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence. *Gavin, supra*; *Brown* at ¶ 19. "Moreover, two or more persons may have joint constructive possession of the same object." *Id.*

{¶12} Appellant argues that the State failed to show the presence of any chemicals used to make methamphetamine and also failed to show that Appellant possessed a chemical used to make methamphetamine. More specifically, Appellant argues that while Sergeant Smith identified various

different packaging and containers for some chemicals commonly used in making meth, he did not testify that any of the containers contained the indicated chemicals and no testing was performed to confirm the identity of any chemical used to make meth. She further argues that even if it is determined that the search yielded chemicals used to make meth, there was insufficient evidence to prove that she possessed the chemicals. Based upon the following, we reject Appellant's arguments.

{¶13} As set forth above, the State introduced testimony from four witnesses at trial, including a Rite-Aid pharmacist, a forensic scientist from BCI, a Meigs County Sheriff's Sergeant, and Appellant's co-defendant, in support of its theory that Appellant possessed and assembled chemicals used in the manufacture of methamphetamine and also manufactured methamphetamine. Rite-Aid Pharmacist Ronald Duvall testified that Rite-Aid maintains a central database that monitors purchases of pseudoephedrine, an ingredient in methamphetamine. He testified that business records maintained by Rite-Aid demonstrated that Appellant attempted to purchase Zyrtec-D, which contains pseudoephedrine, on January 7, 2015, but was blocked from making the purchase due to the fact that she had purchased more than the maximum amount allowed by law over

a thirty-day time period. He further testified that she successfully purchased Allegra-D, which also contains pseudoephedrine, on January 13, 2015.

{¶14} BCI Forensic Scientist Stanton Wheasler also testified on behalf of the State and was qualified as an expert. He testified that he tested four items that were provided to him in connection with this case. One of the items contained an insufficient sample, one was not able to be identified, but two of the four items, which consisted of a bag containing powder and a plastic bottle with glass vials, contained methamphetamine. Plastic tubing submitted with the plastic bottle also contained trace amounts of methamphetamine. The BCI records indicate that the item determined to contain methamphetamine came from a one-pot lab, which the record reveals was recovered from Appellant's vehicle.

{¶15} Meigs County Sheriff's Department Sergeant Adam Smith testified that he had obtained specialized training with regard to meth labs and is a certified meth technician. He testified that the certification enabled him to identify, dismantle and neutralize meth labs for transport and disposal. He testified that his experience included responding to over sixty meth labs. He further testified that he initially arrived at the residence in

question on January 21, 2015, after his review of NPLEx logs[1] and his

investigation at two other residences pointed him there. He testified that he

planned to conduct a "knock and talk," but that when Mark Russell opened

the door, he saw Appellant and Terri Carmichael sitting on the couch

holding aluminum foil with smoke coming off of it. He also testified that in

plain view was what appeared to be Drano and tubing under the kitchen

sink. Smith testified that based upon his findings he removed Appellant,

Russell and Carmichael from the residence, obtained a search warrant, and

then searched the residence as well as the vehicles parked at the residence.

{¶16} Contrary to Appellant's argument that his testimony was vague

and lacking in specificity, the record indicates Sergeant Smith testified in

great detail as to the items recovered during the search and also testified

regarding nearly sixty photos introduced by the State. Overall, between the

residence, the trash and a burn pile, Smith testified that he found salt,

solvents, Coleman fuel, liquid fire, drain cleaner, lithium batteries that had

been cut in two, ice packs, boxes and water bladders from ice packs and

pseudoephedrine. Smith testified that these items are all precursors or

ingredients required for the manufacture of methamphetamine. He also

testified that he located scales in Appellant's bedroom that actually had

---

[1] Smith testified that NPLEx is a national database for anyone that buys Sudafed and that at the time he was monitoring approximately thirty individuals, including Appellant, on a watch list he had compiled from the database.

Appellant's name written on them in paint marker. Smith further testified that he located an active one-pot meth lab in Appellant's vehicle that was parked at the residence. He testified that he submitted the four items, including the one-pot, to BCI for testing.

{¶17} Finally, Terri Carmichael, the owner of the house and Appellant's co-defendant, testified on behalf of the State. Carmichael testified that Appellant was at her house and they were "smoking a little bit of meth" when law enforcement knocked on the door on January 21, 2015. She testified that Appellant had been living at her house for about a month and that although Appellant's boyfriend, Mark Russell, was present that day, he did not live there. She testified that she had purchased Sudafed on prior occasions, approximately eight times, to give to Appellant, in return for money and meth.

{¶18} Carmichael testified that she saw Appellant and Russell manufacture methamphetamine the night of January 20, 2015, and that the meth was "finished" at her house. She said that earlier in the day on January 21, 2015, and before law enforcement arrived, she, along with Appellant and Russell, had gone to Walmart in Gallipolis to purchase Sudafed. She testified that they also stopped at Wetter's/Tru Value Lumber that day to purchase Coleman fuel. She testified that they arrived back home at

approximately 3:00 p.m., and that police arrived at about 3:15 p.m.  Finally, Carmichael testified that she was arrested on January 21, 2015 and had already pleaded guilty to possession of chemicals, but not manufacturing. She testified that she contacted Sergeant Smith to set up a deal for a plea agreement, and that she was awaiting sentencing pending providing testimony in this case.

{¶19} In the case sub judice, contrary to Appellant's arguments, we believe that Appellant's illegal manufacture and illegal assembly convictions are supported by sufficient evidence.  Specifically, we conclude that a review of the evidence leads to a rational conclusion that Appellant knew that methamphetamine was being manufactured in the residence, that Appellant engaged in some part, if not all, of the manufacturing process, and also that she had assembled and possessed chemicals used in the manufacture of methamphetamine, both prior to and after the cook that took place either the night of January 20, 2015, or early morning of January 21, 2015.

{¶20} In sum, the evidence and reasonable inferences show the following: (1) Appellant was living in the residence; (2) stripped lithium batteries and cold pack bladders were located in and around the residence as well as the trash; (3) cutting open or stripping lithium batteries and removing

water bladders from cold packs is part of the production of methamphetamine; (4) evidence in the form of NPLEx database records and co-defendant testimony demonstrate Appellant's repeated attempts to purchase and/or acquire pseudoephedrine, including testimony from Appellant's co-defendant that additional pseudoephedrine and Coleman fuel were purchased the day after Appellant cooked meth on January 20, 2015; (5) an active one-pot meth lab was found in Appellant's vehicle; and (6) due to the number of ingredients and precursors found in the residence, as well as scales with Appellant's name on them located in Appellant's bedroom, and an active one-pot meth lab found in Appellant's vehicle, Appellant was aware that methamphetamine was being manufactured on the premises, and she was actively involved in the manufacture as well as the ongoing illegal assembly and possession of chemicals used in the manufacture of methamphetamine.

{¶21} Further, we find no merit to Appellant's assertion that the State was required to formally test and identify the chemicals found, such as the Coleman fuel, the Drano, or the lithium from the batteries. Instead, we conclude that the fact that the active one-pot was confirmed to contain methamphetamine leads to a reasonable inference that the various other chemicals found in the residence were, in fact, what they appeared to be.

Additionally, Sergeant Smith testified that he had obtained specialized training in the identification of meth labs. As such, we conclude that his testimony, if believed, establishes that chemicals used in the manufacture of methamphetamine were identified.

{¶22} Additionally, with respect to Appellant's argument that the State failed to prove she possessed any chemical used in the manufacture of methamphetamine, the testimony at trial indicates that Appellant had successfully purchased pseudoephedrine on January 13, 2015, that she, Carmichael and Russell purchased additional pseudoephedrine on January 21, 2015, that she lived in the residence where all of the various different chemicals and precursors were located, that scales with her name on them were located in her bedroom, and that what was confirmed to be a one-pot meth lab was found in her vehicle. Therefore, the jury could have rationally determined that given these circumstances, Appellant illegally possessed and assembled chemicals used in the manufacture of methamphetamine and also engaged in some part, or all, of the manufacture of methamphetamine.

{¶23} Finally, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, we conclude any rational trier of fact could have found all the essential elements of these offenses beyond a reasonable doubt. As such, we

conclude Appellant's convictions are supported by sufficient evidence.

Accordingly, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶24} In her second assignment of error, Appellant contends that the trial court erred in failing to merge her convictions for purposes of sentencing, convictions which she argues are for allied offenses of similar import. Appellant did not raise this issue during the proceedings below so she has forfeited all but plain error. The Supreme Court of Ohio, however, has previously recognized that a trial court plainly errs when it imposes multiple sentences for allied offenses of similar import. *State v. Wilson*, 4th Dist. Scioto No. 13CA3542, 2015-Ohio-2016, ¶ 63 (internal citations and footnote omitted).

{¶25} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," and this protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution. This constitutional protection prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072 (1969),

overruled on other grounds; *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201 (1989).

{¶26} The General Assembly enacted R.C. 2941.25 to specify when multiple punishments can be imposed:

> "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶27} Appellate courts apply a de novo standard of review in an appeal challenging a trial court's determination of whether offenses constitute allied offenses of similar import that must be merged under R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28; *State v. Cole*, 4th Dist. Athens No. 12CA49, 2014-Ohio-2967, ¶ 7.  Merger is a sentencing question, and the defendant bears the

burden of establishing his entitlement to the protection of R.C. 2941.25.

*State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661,

¶ 18.

{¶28} The Supreme Court of Ohio recently clarified the applicable

analysis in determining when two offenses merge under R.C. 2941.25 in

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. "In

determining whether offenses are allied offenses of similar import within the

meaning of R.C. 2941.25, courts must evaluate three separate factors—the

conduct, the animus, and the import." *Id.* at paragraph one of the syllabus.

"Under R.C. 2941.25(B), a defendant whose conduct supports multiple

offenses may be convicted of all the offenses if any one of the following is

true: (1) the conduct constitutes offenses of dissimilar import, (2) the

conduct shows that the offenses were committed separately, or (3) the

conduct shows that the offenses were committed with separate animus." *Id.*

at paragraph three of the syllabus.

{¶29} As set forth above, Appellant did not raise the issue of merger

during the proceedings below. Likewise, the record bears no indication that

the trial court addressed the issue of allied offenses of similar import or

made a determination regarding merger before sentencing Appellant. This

Court has previously remanded cases to the trial court to make initial

determinations and findings regarding allied offenses of similar import,

rather than deciding the issue for the first time on appeal.  However, we have

more recently determined that "we do not believe that a trial court's failure to

consider the merger issue mandates a remand in all cases.  Instead, a remand

is unnecessary when the evidence in the record sufficiently allows for

independent review." *State v. Wilson, supra,* at ¶ 82; citing *State v. Whitaker*,

2013-Ohio-4434, 999 N.E.2d 278, ¶ 66.

{¶30} Because we conclude that the record before us sufficiently

allows for independent review of this issue, and in the interests of judicial

economy, we will address this argument on the merits rather than remanding

the case to the trial court for a determination.  Further, based upon the

following, we conclude that the offenses presently at issue were committed

separately and with a separate animus and thus, are not allied offenses of

similar import subject to merger.

{¶31} Here, although the dates specified in the indictment list both

offenses as being committed on or about January 21, 2015, the record

demonstrates that the offenses were ongoing and expanded beyond that date

alone.  For instance, there is evidence in the record that Appellant purchased

pseudoephedrine on January 13, 2015, approximately 7 days prior to the day

the meth was cooked on the night of January 20, 2015, and that Carmichael

had purchased pseudoephedrine on eight different occasions, which she gave to Appellant in exchange for meth. There is also evidence in the record that Appellant, Carmichael and Russell together traveled to two different locations on January 21, 2015, the day after the meth was cooked, to buy additional pseudoephedrine and Coleman fuel. Further, there is evidence in the record that aside from the used, but still active, one-pot meth lab that was located in Appellant's vehicle, law enforcement found an abundance of additional ingredients scattered throughout the residence "over and above" what was used for the January 20, 2015 cook.[2]

{¶32} Appellant argues that our prior decision in *State v. Sluss*, 4th Dist. Highland No. 13CA24, 2014-Ohio-4156, is controlling and dictates that the offenses at issue must be merged for purposes of sentencing as the indictment herein alleges that both the illegal assembly/possession and the manufacturing occurred on January 21, 2015. Appellant also argues that because law enforcement only had one encounter with her, the offenses at issue should have been merged for sentencing. We disagree.

{¶33} First, in *Sluss*, we were assuming a hypothetical and even then, we essentially stated that such hypothetical "may" result in a different outcome, i.e. offenses being determined to be allied and requiring merger,

---

[2] Sergeant Smith, a certified meth technician, testified upon cross-examination in response to defense counsel's questioning that an active lab is any lab that has not been neutralized.

not that a different outcome would be required. *Sluss* at ¶ 22. Second, we are more inclined to apply the reasoning of the concurring opinion written by Judge Harsha in *Sluss*, which seems to place more weight on the fact that the evidence indicated Sluss had "chemicals used to manufacture methamphetamine 'over and above' what he used in the two 'cooks' * * *." *Sluss* at ¶ 31 (concurring opinion).

{¶34} We further conclude that the facts before us are similar to the facts in *State v. Chandler*, 4th Dist. Highland No. 14CA11, 2014-Ohio-5215, ¶ 1, 3, which involved charges of illegal assembly or possession, as well as manufacturing of methamphetamine, and which stemmed from a single encounter with law enforcement. In *Chandler*, we determined that the crimes were not committed with the same conduct or with the same animus. *Id.* at ¶ 26. In reaching that decision, we found:

> "determinative the fact that Appellant appears to have
> purchased pseudoephedrine, cold packs and other materials on
> different days that [sic] the actual manufacturing at issue in this
> case took place, as well as the fact that additional cold packs,
> over and above those needed to manufacture the meth made on
> November 1, 2013, were found in Appellant's bedroom during
> the search."

We find the reasoning in *Chandler* to be persuasive and determinative to the facts presently before us.  Although *Chandler* was decided under the rubric of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, and without the benefit of the more recent clarification of the test issued by the Ohio Supreme Court in *State v. Ruff, supra,* we believe the reasoning set forth in Chandler nevertheless provides appropriate guidance for the determination of this issue and is applicable to the case presently before us.

{¶35} In light of the foregoing, the trial court did not commit plain error in failing to merge these offenses because they are not allied offenses of similar import.  Accordingly, Appellant's second assignment of error is overruled and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:     Concurs in Judgment and Opinion.
Hoover, J.:    Concurs in Judgment and Opinion as to Assignment of Error I;
               Concurs in Judgment Only as to Assignment of Error II.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL      Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**