[Cite as *State v. Angus*, 2017-Ohio-1100.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                    :

                                     :          Case No. 15CA3507

      Plaintiff-Appellee,       :

                                       :

      vs.                       :          DECISION AND JUDGMENT
                                       :          ENTRY

SABRINA ANGUS,                    :

                                       :

      Defendant-Appellant.      :          **Released: 03/21/17**
_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Nikki Trautman Baszynski,
Assistant Ohio State Public Defender, Columbus, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Pamela C.
Wells, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for
Appellee.
_____

McFarland, J.

{¶1} This is an appeal from a Ross County Court of Common Pleas

judgment entry sentencing Appellant, Sabrina Angus, after a jury found her

guilty of illegal manufacture of drugs, a first degree felony in violation of

R.C. 2925.04(A); illegal assembly or possession of chemicals for the

manufacture of drugs, a second degree felony in violation of R.C.

2925.041(A); and aggravated possession of drugs, a second degree felony in

violation of R.C. 2925.11.  On appeal, Appellant contends that 1) her right to

a fair trial was violated when her refusal to consent to a search of her home was introduced into evidence against her at trial; and 2) the trial court erred when it failed to merge her conviction for manufacturing methamphetamine with her conviction for possessing chemicals in order to manufacture methamphetamine.

{¶2} Because we conclude Appellant's convictions were supported by overwhelming evidence, we cannot conclude Appellant was prejudiced by the admission of testimony indicating she refused to consent to a search of her residence. We further conclude that any arguable error that occurred as a result of the admission of the refusal was harmless beyond a reasonable doubt. Thus, Appellant's first assignment of error is overruled. Likewise, because we have concluded that the offenses at issue were committed with separate conduct and a separate animus, they are not allied offenses of similar import. As such, we cannot conclude that the trial court erred in failing to merge counts one and two for purposes of sentencing. Thus, Appellant's second assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.

FACTS

{¶3} Appellant was indicted for illegal manufacture of drugs, a first degree felony in violation of R.C. 2925.04(A); illegal assembly or

possession of chemicals for the manufacture of drugs, a second degree felony in violation of R.C. 2925.041(A); and aggravated possession of drugs, a second degree felony in violation of R.C. 2925.11, on December 12, 2014. The indictment stemmed from an incident occurring on July 11, 2014, in which law enforcement conducted a search of her residence after her ex-husband, Stuart Angus, reported that he believed she was manufacturing methamphetamine. Appellant pleaded not guilty to the charges and the matter proceeded to a jury trial on September 15-17, 2014.

{¶4} The evidence and testimony introduced at trial will be discussed in further detail below. In summary, the State introduced evidence in the form of a video recording made by Stuart Angus on July 10, 2014, indicating that multiple precursor items or ingredients used in the manufacture of methamphetamine, as well as various items of drug paraphernalia, were present in Appellant's bedroom on that date. The State also introduced testimony by multiple law enforcement personnel involved in the search of Appellant's residence that indicated Appellant admitted to investigating officers that methamphetamine was being manufactured in her house. The State's first witness, Deputy McKeever, testified that after Appellant admitted methamphetamine was being manufactured in her house, she refused to consent to a search and, as a result, a search warrant was obtained.

Defense counsel objected to the statement regarding the refusal to consent to the search, and also moved for a mistrial. The trial court denied the motion.

{¶5} The State also introduced testimony regarding the items found during the course of the search, which included a mason jar with a liquid and powdery white substance in it, multiple water bottles, straws, rubber tubing, gloves, a hair dryer, a hydrochloric acid generator, coffee filters (new and used), burned foil, batteries, starting fluid and four, active one pot methamphetamine labs. The State further introduced evidence from a forensic scientist employed by the Ohio Bureau of Criminal Investigation stating that testing performed on the one pots recovered from Appellant's house resulted in a finding of forty-five grams of methamphetamine, which is fifteen times the bulk amount.

{¶6} Appellant testified in her own defense, as did Appellant's son and former boyfriend, Paul Yancey. Appellant testified that she did not mean to answer yes when asked if methamphetamine was being manufactured in her house. She testified that she was alarmed and confused when law enforcement arrived at her house, and initially thought they were there to tell her that something had happened to two of her children, who

were not present at the time.[1] She further testified she had stayed at Yancey's house the night prior to the search and had worked all day long the following day. She stated she always leaves her door unlocked when she is gone. Yancey testified that he was present in the house the day before the search. He testified that he heard someone in the house while he was in the basement, and when he went upstairs to see who it was, he saw Stuart Angus's vehicle driving away from the house. Appellant's theory at trial was essentially that she had no knowledge of methamphetamine being present or being manufactured in her house and that Stuart Angus set her up due to his desire to obtain custody of their children.

{¶7} The jury ultimately found Appellant guilty on all counts contained in the indictment. The trial court merged count one (manufacturing) with count three (aggravated possession), but declined to merge count two (illegal assembly/possession) for purposes of sentencing. It is from this decision that Appellant now brings her timely appeal, setting forth three assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.    MS. ANGUS'S RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN HER REFUSAL TO CONSENT TO A SEARCH OF HER

---

[1] The record indicates that Appellant has four children. Two had left the residence together and had not returned at the time law enforcement arrived. The record further indicates that at least one of Appellant's children was present at the time law enforcement arrived, her eleven-year-old daughter, who is autistic.

HOME WAS INTRODUCED INTO EVIDENCE AGAINST HER AT TRIAL.

II.     THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE MS. ANGUS'S CONVICTION FOR MANUFACTURING METHAMPHETAMINE WITH HER CONVICTION FOR POSSESSING CHEMICALS IN ORDER TO MANUFACTURE METHAMPHETAMINE."

ASSIGNMENT OF ERROR I

{¶8} In her first assignment of error, Appellant contends that her right to a fair trial was violated when her refusal to consent to a search of her home was introduced into evidence against her.  The State responds by arguing that it did not violate Appellant's rights under the Fourth Amendment, but rather complied with the Fourth Amendment by securing a search warrant in this case.  The State further argues that even if a violation of the Fourth Amendment occurred, this Court should apply a harmless error standard as the mention of Appellant's refusal to consent to a search of her home was inadvertent, the State did not argue or comment that the failure to consent to the search should be used against Appellant, and overwhelming evidence of Appellant's guilt was introduced at trial.  We employ a de novo standard of review when evaluating errors based upon violations of constitutional law. *State v. Bryant*, 4th Dist. Ross No. 14CA3434, 2014-Ohio-5535, ¶ 12; citing *State v. Burgette*, 4th Dist. Athens No. 13CA50, 2014-Ohio-3483, ¶ 10.

{¶9} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Taylor*, 4th Dist. Lawrence No. 15CA12, 2016-Ohio- 2781, ¶ 31; quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. These constitutional provisions contain nearly identical language and have been interpreted to provide the same protection. *Taylor* at ¶ 31; citing *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993 N.E.3d 993, ¶ 11.

{¶10} "The Fourth Amendment protects against two types of unreasonable intrusions: 1) searches, which occur when an expectation of privacy that society is prepared to consider reasonable is infringed upon; and 2) seizures, which occur when there is some meaningful interference with an individual's liberty or possessory interest in property." *Taylor* at ¶ 32; citing *State v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652 (1984).

{¶11} " '[S]earches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions.' " *Taylor* at ¶ 33; quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). As explained in *Taylor*, " '[o]nce the defendant demonstrates that he was

subjected to a warrantless search or seizure, the burden shifts to the state to establish that the warrantless search or seizure was constitutionally permissible.' " *Taylor* at ¶ 33; quoting *State v. Johnson*, 4th Dist. Scioto No. 14CA3618, 2014-Ohio-5400, ¶ 13; citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98.

{¶12} Appellant contends that her Fourth Amendment rights were violated when Deputy Andrea McKeever testified upon direct examination that Appellant refused to consent to a search of her residence on the night in question.  A review of the trial transcript reveals the following testimony was introduced at trial:

> "Ms. Schumaker:  Okay, so what did you do upon arrival?
>
> Deputy McKeever:  I stood by pretty much as witness while Detective Lewis spoke with Ms. Angus.
>
> Ms. Schumaker:  Alright.  And, what, if any, conversation did, or statement, did you hear the Defendant make at that point?
>
> Deputy McKeever:  Detective Lewis asked her if meth was being made in the house and she replied yes, at which point she was read her Miranda rights and she refused for us to search to search [sic] the residence so we had to get a search warrant."

At this point, defense counsel lodged an objection and then made a motion for a mistrial.

{¶13} The jury was recessed and a recording of the testimony was played back.  There was some discussion as to whether Appellant asserted

her Fifth Amendment right to remain silent, or whether she had refused to consent to a search.[2]  It was decided that the statement at issue dealt with refusal to consent to a search of her residence, rather than an assertion of her right to remain silent.  The trial court stated that had the witness commented upon Appellant's assertion of her right to remain silent as guaranteed by the Fifth Amendment, it would have declared a mistrial.  However, because the statement at issue instead involved Appellant's refusal to consent to a search of her residence, he denied the motion.  Defense counsel expressed his disagreement with the decision and the trial was resumed.  The State made no further mention, during its case-in-chief or in closing, regarding the refusal to consent to a search.

{¶14} Appellant contends that the issue presented for review is whether a defendant's refusal to consent to a search may be used as evidence at trial, and notes that this particular issue has not been directly addressed by the Supreme Court of Ohio or the Supreme Court of the United States.

---

[2] "The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person 'shall be compelled in any criminal case to be a witness against himself.' " *State v. Bryant, supra,* ¶ 13; quoting *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11.  " 'The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation. * * * Additionally, a defendant can invoke his rights "at any time prior to or during questioning[.]" ' " *Id.*; quoting *State v. Harper*, 4th Dist. Vinton No. 11CA684, 2012-Ohio-4527, ¶ 14; in turn quoting *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S.Ct. 1602 (1966).  Further, as we noted in *Bryant* at ¶ 14, " 'Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either pre-arrest or post-arrest circumstances] as substantive evidence of guilt in its case-in-chief.' " Citing *State v. Bennett*, 9th Dist. Loraine No. 12CA010286. 2014-Ohio-160, ¶ 63; citing *Wainwright v. Greenfield*, 474 U.S. 284, 295, 106 S.Ct. 634.

However, she urges this Court to apply the reasoning of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240 (1976), which involved the Fifth Amendment right against self incrimination, to the present case, which involves the Fourth Amendment right to be free from unreasonable searches and seizures. Appellant specifically argues that "the Supreme Court of the United States has made it clear that [defendants] *cannot* be penalized for exercising their right to remain silent. * * * This Court should hold that defendants also cannot be penalized at trial for exercising their Fourth Amendment right to refuse to consent to a warrantless search."

{¶15} In *Doyle v. Ohio*, the Court held that "the use for impeachment purposes of petitioner's silence, at the time of arrest and after they received Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment."  In *State v. Froe*, 4th Dist. Scioto No. 02CA2860, 2003-Ohio-7334, ¶ 55, this Court observed that "*Doyle* has been held to mean that Miranda warnings contained an implied assurance that a defendant would not suffer any penalty for invoking his right to remain silent." Citing *Wainwright v. Greenfield, supra,* at ¶ 55.  We further noted in *Froe* that "[t]ypically *Doyle* violations involve the prosecutor using post-*Miranda* silence to impeach a defendant during trial. *Froe* at ¶ 60.  However, in *Froe* we reasoned that the *Doyle* rule could extend to other situations, explaining

that "a prosecutor can implicitly imply the defendant's silence is evidence of guilt through police testimony about the defendant invoking his right to remain silent or to consult an attorney." *Id.* (internal citations omitted).

{¶16} Finally, we observed that the *Doyle* test was two-fold and required a determination as to whether the prosecutor's comment was "extensive and whether the prosecutor "stressed to the jury an inference of guilt from the accused's silence as a basis of conviction[.]" *Froe* at ¶ 61. Despite finding that the comment at issue was extensive and rose to the level of a *Doyle* violation, applying a plain error standard this Court could not conclude the outcome of the trial would have been different absent the statements. *Id.* at ¶ 62-63. Yet, Appellant did object to the testimony at issue and thus we are conducting a de novo review as opposed to a plain error review.

{¶17} Appellant cites several cases in support of her argument urging us to extend the reasoning of *Doyle* to comments made regarding a defendant's assertion of the right to be free from unreasonable searches and seizures. She argues that "[d]efendants should not be penalized for exercising their constitutional rights[,]" citing *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229 (1965) in support. She further contends that there is a body of precedent, which includes most of the federal circuit courts and a

multitude of state courts, that " 'uniformly hold that the prosecution may not use evidence of a person's refusal to consent to a search to prove his or her guilt through an inference of guilty knowledge or consciousness of guilt.' " Citing *People v. Pollard*, 307 P.3d 1124, 2013 COA 31M (2013) and *State v. Runyan*, 290 F.3d 223, 249 (5th Cir.2002).

{¶18} Despite Appellant's urging, we are not persuaded that a comment by the State's witness regarding Appellant's refusal to consent to a search of her home constitutes a Fourth Amendment violation analogous to commenting upon a defendant's Fifth Amendment right to remain silent. As argued by the State, the right protected by the Fourth Amendment, by its plain language, is the right to remain free from unreasonable searches, not the right to prevent the State from commenting upon the refusal to consent to a search of her home. Further, as argued by the State, Appellant's assertion of her Fourth Amendment right to be free from unreasonable searches and seizures was respected, as law enforcement stopped their investigation and obtained a search warrant before proceeding. However, if the State's comment regarding Appellant's refusal to consent to a search does constitute a violation of Appellant's rights under the Fourth Amendment and applying *Doyle* by analogy, we find any error committed by the trial court to be harmless beyond a reasonable doubt. *See State v. McMillion,* 11th Dist.

Ashtabula No. 2005-A-0016, 2006-Ohio-3229, ¶ 27 ("Alleged *Doyle* violations are analyzed under a harmless error standard.") (internal citations omitted).

{¶19} A constitutional error is not prejudicial if the error is "harmless beyond a reasonable doubt." *State v. Love*, 4th Dist. Ross No. 05CA2838, 2006-Ohio-1824, ¶ 34; quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824 (1967). "[E]rror is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus (1983); *State v. Woods,* 4th Dist. Ross No. 09CA3090, 2009-Ohio-6169, ¶ 27; *see also State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78; *State v. Osman*, 4th Dist. Athens No. 09CA36, 2011-Ohio-4626, ¶ 88.

{¶20} Appellant herein was convicted of three felony counts: count one, illegal manufacture of drugs, a first degree felony in violation of R.C. 2925.04(A); count two, illegal assembly or possession of chemicals for the manufacture of drugs, a second degree felony in violation of R.C. 2925.041(A); and count three, aggravated possession of drugs, a second degree felony in violation of R.C. 2925.11. R.C. 2925.04(A), illegal manufacture of drugs, provides that "[n]o person shall knowingly cultivate

marihuana or knowingly manufacture or otherwise engage in any part of the production of a controlled substance." R.C. 2925.041(A), illegal assembly or possession of chemicals for the manufacture of drugs, provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." R.C. 2925.11, aggravated possession of drugs, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."[3]

{¶21} The State introduced several witnesses at trial. Deputy Andrea McKeever testified that she initially came to the station to take Stuart Angus's complaint, viewed the video he brought with him, and then called Detectives Davis and Lewis. She further testified that she accompanied Davis and Lewis to Appellant's residence and stood by as a witness. She testified that while acting as a witness she heard Detective Lewis ask Appellant if meth was being made in her home, to which she responded "yes." She further testified that when the residence was searched she saw several plastic bags tied together with four bottles in them by the front door.

---

[3] The drug possession charge was elevated to aggravated possession as Appellant was charged and convicted of possessing methamphetamine, a Schedule II controlled substance, in an amount equal to or exceeding five (5) times the bulk amount but less than fifty (50) times the bulk amount.

{¶22} Stuart Angus, Appellant's ex-husband, also testified on behalf of the State. He testified that he went to Appellant's residence after receiving a call from Appellant's son stating he had "come across some stuff that he was really worried about." He testified that he video recorded what he saw when he arrived, which included a mason jar with a lid on it that had "a liquid with a white powdery substance and little black balls floating in it[,]" coffee filters with liquid and white powdery substances in them, additional coffee filters sealed in a package, straws, bottles of rubbing alcohol, rubber tubing, and water bottles, all in Appellant's bedroom.

{¶23} Detective Alan Lewis also testified at trial. He testified that Appellant said "yes" when asked if methamphetamine was being manufactured in the house. He testified that during the search of the residence he found the following items in Appellant's bedroom: a hair dryer, a lot of aluminum foil (some with burn marks), coffee filters (some in packages and some loose), a container of salt, a straw and a pipe. He testified that the hair dryer was lying next to the salt and coffee filters. He further testified that he found starting fluid on the back porch.

{¶24} Major Timothy Dickinson, a clandestine methamphetamine lab technician, also testified. He testified regarding the process used to manufacture methamphetamine, which includes using ingredients such as

salt, lithium and fuel, all found at Appellant's residence, and items such as mason jars, tubing, and a hydrochloric acid generator (HCL generator). Officer Cory Hicks, who assisted with the meth lab clean-up, also testified. He testified that he identified the bottles found inside a bag at Appellant's residence as four, active "one pot" methamphetamine labs. He testified that aside from the four one pots, there was also an HCL generator present.

{¶25} Detective Chris Davis testified regarding Appellant's admission to methamphetamine being manufactured in her house. He testified that during the search of the residence he observed a hair dryer, a container of salt, a pipe, paraphernalia items, a clear mason jar, blue gloves, straws, black tubing, foil with burn marks, and a couple of batteries, all located in Appellant's bedroom. He further testified that in the living room he observed a plastic bag and a yellow book bag with three one pots, an HCL generator, and coffee filters. He testified he found starting fluid in an enclosed porch area. Finally, Megan Snyder, a forensic scientist in the drug chemistry section at the Ohio Bureau of Criminal Identification and Investigation (BCI), testified and she was qualified as an expert by a stipulation of the parties. She testified that items sent for analysis that were recovered from Appellant's residence were identified as forty-five grams of liquid containing methamphetamine, which is fifteen times the bulk amount.

{¶26} We conclude that the above evidence constitutes overwhelming evidence of Appellant's guilt on all three counts of the indictment. Appellant admitted that methamphetamine was being manufactured in her home, and four active one pot meth labs were found in her living room which contained fifteen times the bulk amount. Further, there was evidence that multiple ingredients and items used in the manufacture of methamphetamine were found in her bedroom and other areas of her house.

{¶27} In *State v. Love*, this Court determined that the admission of testimony indicating Love wanted a lawyer was constitutional error, however, in addition to finding the error did not rise to the level of plain error, we also acknowledged and applied a harmless error standard. *Love* at ¶ 32 and 34. After finding that the comment at issue was only mentioned once and briefly and that the prosecutor did not elicit the statement directly, but rather received it in response to a general question about what happened during the course of the arrest, this Court applied a harmless error standard of review, ultimately finding the error harmless beyond a reasonable doubt. *Love* at ¶ 32-34. In reaching our decision, we noted that "the Ohio Supreme Court has previously held that a single comment by a police officer regarding a suspect's silence without any suggestion that the jury infer guilt from the silence constitutes harmless error." *Love* at ¶ 35; citing *State v.*

*Treesh*, 90 Ohio St.3d 460, 480; citing *Meeks v. Havener* (C.A. 6, 1976), 545 F.2d 9, 10.

{¶28} In *State v. Bryant, supra,* if admission of certain testimony violated Bryant's Fifth Amendment rights, this Court determined that a harmless error standard of review was appropriate. *Bryant* at ¶ 26. Finding that a curative instruction was given, that other evidence established Bryant invoked her right to counsel, and that there was overwhelming evidence to establish Bryant's guilt, we found the error was harmless beyond a reasonable doubt. *Bryant* at ¶ 31. Further, in *State v. Runyan*, a case cited by Appellant in support of her argument, the court applied a harmless error standard to the argument that Runyan's Fourth Amendment rights were violated by admission of testimony indicating Runyan refused consent to a search. *Runyan* at \*249. Ultimately, the court "assume[d] without deciding that it would be error of constitutional magnitude for a trial court to permit a prosecutor to comment on (or present testimony regarding) a defendant's refusal to consent to a warrantless search to support an inference of guilt." (internal footnotes omitted). *Id*. After finding that the comment at issue arose only once during trial, that the "prosecution neither commented on Runyan's refusal to consent to a warrantless search, nor asked the jury to draw any inferences from the refusal[,]" and that the evidence supporting

Runyan's conviction was very strong, the court found the error was harmless beyond a reasonable doubt. *Id*. at *250-251.

{¶29} Here, much like the scenario in both *Love* and *Runyan*, Appellant's refusal to consent to a search of her residence was mentioned only one time. Further, as in *Love*, the prosecutor did not elicit the statement directly, but rather received it in response to a general question about what she witnessed when law enforcement arrived at Appellant's residence. Additionally here, the comment was not extensive, as the State made no further mention of the refusal, either in its case-in-chief or in closing, nor did the prosecution at any time stress to the jury an inference of guilt from Appellant's refusal to search. Thus, applying the test set forth in *Doyle*, we cannot conclude that either prong was met. However, as set forth above, if the admission of Appellant's refusal to search did deprive Appellant of her Fourth Amendment rights, we conclude that the error was harmless beyond a reasonable doubt. Absent this statement made by the State's witness, the remaining evidence of Appellant's guilt is overwhelming.

{¶30} Accordingly, having found that any error in the admission of testimony regarding Appellant's refusal to consent to a search of her residence was harmless beyond a reasonable doubt, her first assignment is overruled.

ASSIGNMENT OF ERROR II

{¶31} In her second assignment of error, Appellant contends that the trial court erred when it failed to merge her conviction for manufacturing methamphetamine with her conviction for illegal assembly or possession of chemicals in order to manufacture methamphetamine.  She argues that it is impossible to manufacture methamphetamine without possessing the materials to do it, and that she was not alleged to have committed the offenses on separate days, locations or times.  The State contends that the two counts caused separate, identifiable harm and were committed with a separate motivation.  Extensive discussion took place between counsel and the trial court before sentencing regarding whether the counts should merge. The trial court ultimately decided that they did not and sentenced Appellant to a separate, concurrent sentence on Count two.

{¶32} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," and this protection applies to Ohio citizens through the Fourteenth Amendment and is additionally guaranteed by Article I, Section 10 of the Ohio Constitution. This constitutional protection prohibits multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072 (1969),

overruled on other grounds; *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201 (1989).

{¶**33**} The General Assembly enacted R.C. 2941.25 to specify when multiple punishments can be imposed:

> "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶**34**} Appellate courts apply a de novo standard of review in an appeal challenging a trial court's determination of whether offenses constitute allied offenses of similar import that must be merged under R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28; *State v. Cole*, 4th Dist. Athens No. 12CA49, 2014-Ohio-2967, ¶ 7. Merger is a sentencing question, and the defendant bears the burden of establishing his entitlement to the protection of R.C. 2941.25. *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18.

{¶35} The Supreme Court of Ohio recently clarified the applicable analysis in determining when two offenses merge under R.C. 2941.25 in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import." *Id*. at paragraph one of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id*. at paragraph three of the syllabus.

{¶36} As set forth above, the jury found Appellant guilty of illegal manufacture of drugs (methamphetamine), illegal assembly or possession of chemicals for the manufacture of drugs, and aggravated possession of drugs. We have already determined that the jury's finding of guilt on all of the charges was supported by overwhelming evidence. The trial court already merged count three with count one (aggravated possession and illegal manufacture) for purposes of sentencing. Thus, we are presented with the

question of whether count two (illegal assembly/possession) should have also been merged with count one for purposes of sentencing.

{¶37} In *State v. Chandler*, 4th Dist. Highland No. 14CA11, 2014-Ohio- 5215, ¶ 25, we determined that "[i]t is possible to possess or assemble the chemicals necessary to manufacture meth, and then to manufacture the drug itself."  As we subsequently noted in *State v. Evans-Goode*, 4th Dist. Meigs No. 15CA10, 2016-Ohio-5361, ¶ 34:

> "Although *Chandler* was decided under the rubric of *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, and without the benefit of the more recent clarification of the test issued by the Ohio Supreme Court in *State v. Ruff, supra,* we believe the reasoning set forth in *Chandler* nevertheless provides appropriate guidance for the determination of this issue and is applicable to the case presently before us."

In *Evans-Goode*, a case that involved charges of illegal assembly or possession, as well as manufacturing of methamphetamine, and which stemmed from a single encounter with law enforcement, we concluded that the two counts did not merge where the record indicated the offenses expanded beyond the date contained in the indictment and where "law enforcement found an abundance of additional ingredients scattered throughout the residence 'over and above' what was used for the * * * cook." *Evans-Goode* at ¶ 31.

{¶38} Here, Appellant contends that the counts at issue should have been merged based upon this Court's prior reasoning in *State v. Sluss*, 4th Dist. Highland No. 13CA24, 2014-Ohio-4156, as the present indictment alleges that both the illegal assembly/possession and the manufacturing occurred on July 11, 2014. We rejected a similar argument in *Evans-Goode*, reasoning as follows:

> "First, in *Sluss*, we were assuming a hypothetical and even then, we essentially stated that such hypothetical 'may' result in a different outcome, i.e. offenses being determined to be allied and requiring merger, not that a different outcome would be required. *Sluss* at ¶ 22. Second, we are more inclined to apply the reasoning of the concurring opinion written by Judge Harsha in *Sluss*, which seems to place more weight on the fact that the evidence indicated Sluss had 'chemicals used to manufacture methamphetamine "over and above" what he used in the two "cooks" * * *.' *Sluss* at ¶ 31 (concurring opinion)."

We likewise reject the argument raised herein.

{¶39} Much like the facts before us in *State v. Evans-Goode, supra,* although the indictment alleges that all of the offenses occurred on the same day, July 11, 2014, the evidence introduced at trial indicates that while four active one pot methamphetamine labs were found in Appellant's residence on July 11, 2014, various precursor items used in the manufacture of methamphetamine were present in Appellant's residence on July 10, 2014. A video taken on Appellant's ex-husband, Stuart Angus's, cell phone, which was played for the jury, reveals that a mason jar, coffee filters with liquid

and a white powdery substance in them, a sealed package of coffee filters, straws, rubber tubing and water bottles were all located in Appellant's bedroom on July 10, 2014. Also, aside from the four active one pots found in the residence on July 11, 2014, law enforcement who responded to the scene found starting fluid located outside the residence, and found a box of Morton salt, a package of unused coffee filters, and a "couple" of batteries. The only question is whether there was sufficient evidence that these items were acquired on different days leading up to the manufacture or "cook" of the methamphetamine at issue, and/or whether there were quantities of chemicals "over and above" those used in the manufacture of the four one pots that were located in the residence.

{¶40} There is no evidence in the record as to when the various precursor items or ingredients were purchased or assembled. All we can glean from the record is that individual ingredients used in the manufacture of methamphetamine were present in Appellant's residence on July 10, 2014, the day before the four active one pots were found. Further, the search of the residence on July 11, 2014 revealed that in addition to the four active one pots, Detective Alan Lewis testified that he observed coffee filters in a package and a container of salt in Appellant's bedroom. He testified that he observed a can of starting fluid on Appellant's back porch. Detective Chris

Davis testified that he located a container of Morton salt and a couple of batteries in Appellant's bedroom, coffee filters in the living room and starting fluid on an enclosed porch area. The detectives did not testify to finding empty salt boxes, empty cans of starter fluid, or destructed batteries. Thus, the logical inference is that there was salt in the container, starter fluid in the can and the batteries were intact.[4] Although it would have been preferable for the testimony to include descriptions of the quantities of these items found, we do not believe it is essential.

{¶41} We conclude that the evidence in the record before us indicates that Appellant was illegally assembling chemicals used in the manufacture of methamphetamine beginning at least on July 10, 2014, that were used in the manufacture of methamphetamine, which was confirmed by the identification of four active one pot methamphetamine labs located in her residence on July 11, 2014. Further, Appellant was in possession of salt, batteries, and starter fluid over and above the quantities used in the methamphetamine manufactured by the four active one pots. Thus, based upon the foregoing, we conclude that the offenses presently at issue were committed separately and with a separate animus and are not allied offenses of similar import subject to merger.

---

[4] A photo exhibit admitted into evidence does show two batteries remaining in an opened package.

{¶42} We acknowledge that this is a very close case, in the absence of testimony regarding the quantities of the ingredients remaining over and above what was already used in the cook, and in the absence of evidence such as receipts demonstrating purchases of the various precursor items on different days or pseudoephedrine purchase log evidence. Nevertheless, we conclude the evidence sufficiently establishes that various precursor materials were being acquired leading up to the manufacture of the four one pots on July 11, 2014, and that quantities of salt, batteries, and starting fluid were found in Appellant's house "over and above" what was used during the manufacturing process that had already occurred. As such, we cannot conclude that the trial court erred in failing to merge counts one and two for purposes of sentencing and Appellant's second assignment of error is overruled.

{¶43} Accordingly, having found no merit to either of the assignments of error raised by Appellant, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:     Concurs in Judgment and Opinion.
Hoover, J.:   Concurs in Judgment and Opinion as to Assignment of Error II;
                   Concurs in Judgment Only as to Assignment of Error I.

For the Court,

BY:  _____
      Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**