[Cite as *State v. Scoggins*, 2017-Ohio-8989.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 16CA3767 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| RONALD SCOGGINS, | : | |
| Defendant-Appellant. | : | RELEASED 12/8/2017 |

_____

APPEARANCES:

John Rutan, Columbus, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Jay Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Hoover, J.

{¶1} Defendant-appellant, Ronald Scoggins ("Scoggins"), appeals his convictions and sentence for numerous drug related charges as well as one count of endangering children after a search of a vehicle under his possession and control revealed several active one-pot methamphetamine labs as well as additional materials used to produce methamphetamine. The Scioto County Common Pleas Court denied Scoggins's motion to suppress the evidence found as a result of the search; and Scoggins was subsequently found guilty, following a jury trial, of the charged offenses. Scoggins was sentenced to a total aggregate sentence of 22 years imprisonment, with 19 years being mandatory.

{¶2} Because we determine that the trial court properly denied Scoggins's motion to suppress, and that Scoggins's remaining assignments of error pertaining to his convictions and sentence are also without merit, we affirm the judgment of the trial court. However, our own

review of the record reveals errors in two of the jury verdict forms and in the sentencing entry constituting plain error; thus under App.R. 9(E) we instruct the trial court to issue a nunc pro tunc sentencing entry correcting the errors described more thoroughly in this decision.

## I. Facts and Procedural History[1]

{¶3}    This case arose after officers from the Southern Ohio Drug Task Force and Scioto County Common Pleas Adult Probation Department conducted a probation home check at a property in Scioto County. Upon arriving to the property, the officers located a running vehicle in the driveway. Inside the vehicle, in open view of the officers, was an active one-pot methamphetamine lab. A more thorough search of the vehicle revealed a tool bag, which contained two more active one-pot methamphetamine labs, two spent one-pot methamphetamine labs, and various materials commonly used to produce methamphetamine. The vehicle, which was unoccupied at the time of the officers' arrival, contained Scoggins's driver's license and a cell phone associated with Scoggins. Several individuals, including a minor child, were inside a house on the property. Scoggins, however, was not located at the house or anywhere else on the property.

{¶4}    On May 12, 2015, Scoggins was indicted on four counts: aggravated trafficking of methamphetamine in violation of R.C. 2925.03(A)(2) and R.C. 2925.03(C)(1)(f), a first degree felony; aggravated possession of drugs/methamphetamine in violation of R.C. 2925.11(A) and R.C. 2925.11(C)(1)(e), a first degree felony; illegal manufacture of drugs/methamphetamine in the vicinity of a juvenile in violation of R.C. 2925.04(A) and R.C. 2925.04(C)(3)(a), a second degree felony; and illegal assembly or possession of chemicals for the manufacture of drugs/methamphetamine in the vicinity of a juvenile in violation of R.C. 2925.041(A) and R.C.

---

[1] The evidence and testimony introduced at trial will be discussed in further detail below.

2925.041(C), a second degree felony. Scoggins pleaded not guilty to the charges. On May 23, 2016, Scoggins filed a motion to suppress the evidence seized as a result of the search of the vehicle. After a hearing on the motion to suppress, the trial court overruled the motion.

{¶5}    Following the trial court's denial of the motion to suppress, but approximately a month before the commencement of the scheduled trial, the State filed a superseding indictment. The superseding indictment added that the aggravated trafficking of methamphetamine charge was committed in the vicinity of a juvenile, and added a count of endangering children in violation of R.C. 2919.22(B)(6) and R.C. 2919.22(E)(3), a third degree felony.

{¶6}    Scoggins was tried before a jury on August 22 and 23, 2016. At the conclusion of trial Scoggins was convicted of all the indicted charges. The jury also determined that the drugs were equal to or exceeded 5 times the bulk amount and were less than 50 times the bulk amount, and that the aggravated trafficking of methamphetamine, illegal manufacture of drugs/methamphetamine, and the illegal assembly offenses were committed in the vicinity of a juvenile. At sentencing, the trial court merged the aggravated trafficking and aggravated possession counts with the illegal manufacture count. The trial court sentenced Scoggins to 11 years incarceration on the illegal manufacture count[2], 8 years on the illegal assembly count, and 36 months on the endangering children count, to be served consecutively for a total aggregate sentence of 22 years imprisonment with 19 years being mandatory.

{¶7}    Shortly thereafter, a sentencing entry was journalized and Scoggins then filed a timely notice of appeal.

## II. Assignments of Error

---

[2] At sentencing the trial court found that the illegal manufacture count shall be enhanced from a felony two to a felony one because of the finding that the offense was committed in the vicinity of a juvenile. *See* R.C. 2925.04(C)(3)(b) ("If the drug involved in the violation is methamphetamine and if the offense was committed in the vicinity of a juvenile * * * illegal manufacture of drugs is a felony of the first degree * * *.")

{¶8}   Scoggins assigns the following errors for our review:

First Assignment of Error:

The Trial Court Erred By Denying Appellant's Motion to Suppress.

Second Assignment of Error:

The Appellant's 6th Amendment Right To Fair And Impartial Jury Was Violated.

Third Assignment of Error:

The Trial Court Abused It's Discretion And Committed Prejudicial Error In The Handling Of Numerous Criminal Rule 16 Violations Committed By The State By Not Excluding The Testimony Of James Cunningham And Payton Scott.

Fourth Assignment of Error:

The Trial Court Erred By Not Granting A Mistrial After Payton's Prejudicial Statement And Prejudicial Questions By The Prosecutor.

Fifth Assignment of Error:

There Was Insufficient Evidence To Support Appellants Conviction For Count 1, Aggravated Possession, Count 2 Aggravated Trafficking Of Drugs And Count 5 Endangering Children.

Sixth Assignment of Error:

Appellant's Conviction For Count 3 Illegal Manufacturing Of Drugs And The Enhancements For Counts 1, 3 and 4 Was Against The Manifest Weight Of The Evidence.

Seventh Assignment of Error:

The Trial Court Erred In Failing To Merge Appellants Sentences.

Eighth Assignment of Error:

The Trial Court Erred In Failing To Merge The Sentences of Child Endangerment With the Elevated Felonies.

Ninth Assignment of Error:

The Trial Court Abused Its Discretion In Sentencing The Appellant To A Near Maximum Prison Term And In Imposing Consecutive Terms.

### III. Law and Analysis

### A. First Assignment of Error: Motion to Suppress

{¶9}     In his first assignment of error, Scoggins contends that the trial court erred in overruling his motion to suppress evidence.

{¶10}   Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Gurley*, 2015-Ohio-5361, 54 N.E.3d 768, ¶ 16 (4th Dist.), citing *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. At a suppression hearing, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.*; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Thus, when reviewing a ruling on a motion to suppress, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Gurley* at ¶ 16, citing *State v. Landrum*, 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However, "[a]ccepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case." *Id.*, citing *Roberts* at ¶ 100.

{¶11}   At the suppression hearing, Detective Lee Bower of the Southern Ohio Drug Task Force testified that he responded to the Charles Wooten residence in McDermott, Ohio, to assist other officers from the task force and officers from the Scioto County Common Pleas Adult Probation Department. The purpose of the visit was to conduct a home visit on probationer Payton Scott, who was residing at the Wooten residence.[3] It had been reported that Scott was abusing drugs at the residence, that methamphetamine was being produced at the residence, and that anhydrous ammonia might be present at the residence. Detective Bower indicated that upon

---

[3] Payton Scott and Charles Wooten are siblings.

arriving to the residence and looking for probationer Scott he observed a vehicle in the driveway that was locked and running, but that contained no driver or passengers. Detective Bower testified that he looked into the window of the vehicle and observed a one-pot methamphetamine lab that was cooking in the center console of the vehicle. Detective Bower then approached the residence and spoke to Wooten. According to Detective Bower, Wooten told him that the vehicle belonged to Scoggins, and that Scoggins had just run away from the residence. Scott and a minor child were also present in the residence, and according to Detective Bower's testimony, Scott also indicated that a person named "Ronnie" had just run out the door.

{¶12} Detective Bower testified that the fire department was called to the scene due to the high risk of fire and explosion, and to break the driver's side window to ventilate the vehicle. Detective Bower testified that trained agents from the drug task force dressed in protective equipment and began processing the scene. Once the one-pot lab was neutralized, a search of the vehicle was conducted. According to Detective Bower two more active one-pot methamphetamine labs, and two spent one-pot labs were discovered in a tool bag in the back seat of the vehicle. In addition, Scoggins's driver license and cell phone were also found in the vehicle.

{¶13} Paula Breech, Scoggins's girlfriend, also testified at the suppression hearing. Breech testified that she is the titled owner of the vehicle, but that she regularly allows Scoggins to use the vehicle. Breech testified that Scoggins was driving the vehicle on the day that it was searched.

{¶14} Scoggins argues that the search of the vehicle was unlawful because it was conducted without procurement of a warrant and in violation of the plain view doctrine.

{¶15} " 'The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures.' " *State v. Shrewsberry*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 14, quoting *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15. "The Fourth Amendment protects the individual's actual and justifiable expectation of privacy from the ear and eye of the government." *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, ¶ 13, citing *Smith v. Maryland*, 442 U.S. 735, 740-741, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Accordingly, absent a few well-delineated exceptions, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 25, and cases cited therein.

{¶16} We begin by noting that " 'plain view' is a term of art that has specific meaning in the Fourth Amendment context." *Bradford* at ¶ 35, citing Katz & Giannelli, Ohio Criminal Law (2 Ed.), Section 16:3, "Plain View and open view distinguished." "The plain view doctrine applies to warrantless seizures, not warrantless searches. The open view doctrine applies where an officer views an object that is not subject to a reasonable expectation of privacy. No search occurs because the owner of the object has voluntarily exposed it to public view." *Id.; see also State v. Johnson*, 4th Dist. Athens No. 06CA34, 2007-Ohio-4662, ¶ 14 ("Generally, the police are free to observe whatever may be seen from a place where they are entitled to be.")

{¶17} As we explained in *Bradford*, *supra*, at ¶ 36 (citations omitted):

* * * When the police enter private property to conduct an investigation and they restrict their movement to places where the public is expressly or implicitly invited, they have not infringed upon any Fourth Amendment protection. In other

words, home owners normally have a limited expectation of privacy in their

driveway, sidewalk, doorstep, or other normal routes of access to the home. Even

in the home and areas surrounding it, the Fourth Amendment does not protect

what one readily exposes to the open view of others, regardless of where that

exposure takes place.

{¶18}   Here, the law enforcement officers travelled to the Wooten residence to conduct a

probation home check and were lawfully present on the property.[4] While in the driveway of the

residence, officers observed the running vehicle, peered inside, and observed the active one-pot

methamphetamine lab in open view. The officers were able to view the contents of the vehicle

from an area that was expressly or implicitly open to public access, ie, the driveway. Thus, the

incriminating evidence was in "open view" of the officers.

{¶19}   It is important to note that "while the observation of something that is in 'open

view' does not amount to a search, this discovery does not justify a subsequent warrantless

seizure absent some specific exception to the warrant requirement." *Bradford* at ¶ 36. Here,

however, exigent circumstances justified the warrantless search of the vehicle.

{¶20}   Exigent circumstances are a specifically established and well-delineated exception

to the Fourth Amendment search warrant requirement. *State v. Miller*, 4th Dist. Gallia No.

12CA4, 2013-Ohio-691, ¶ 8. "[C]ertain situations present exigent circumstances that justify a

warrantless search. Generally, there must be 'compelling reasons' or 'exceptional circumstances'

to justify an intrusion without a warrant." *State v. Moore,* 90 Ohio St.3d 47, 52, 734 N.E.2d 804

---

[4] Law enforcement is entitled to conduct a warrantless search of a probationer's residence so long as reasonable suspicion exists that evidence of criminal activity can be found at the residence. *State v. Johnson*, 2014-Ohio-5400, 26 N.E.3d 243, ¶ 14 (4th Dist.); R.C. 2951.02(A). Here, the officers had reasonable grounds to believe that the probationer was residing at the Wooten residence, and that drug use and manufacturing was also occurring at the property.

(2000). 804, citing *McDonald v. United States,* 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

{¶21} Regarding exigent circumstances arising from methamphetamine production specifically, Ohio enacted R.C. 2933.33 which states:

> (A) If a law enforcement officer has probable cause to believe that particular
>
> premises are used for the illegal manufacture of methamphetamine, for the
>
> purpose of conducting a search of the premises without a warrant, the risk of
>
> explosion or fire from the illegal manufacture of methamphetamine causing injury
>
> to the public constitutes exigent circumstances and reasonable grounds to believe
>
> that there is an immediate need to protect the lives, or property, of the officer and
>
> other individuals in the vicinity of the illegal manufacture.

This Court has previously determined that R.C. 2933.33(A) allows officers to conduct warrantless searches when they have probable cause to believe methamphetamine production is occurring. *See State v. Robinson*, 4th Dist. Lawrence No. 13CA18, 2015-Ohio-2635, ¶¶ 50-53.

{¶22} In the case sub judice, law enforcement officers observed an active one-pot methamphetamine lab in the center console of the vehicle. This fact, along with the relevant background information that brought them to the residence in the first place, constituted sufficient probable cause that evidence of methamphetamine production would be found in the vehicle. Accordingly, the search of the vehicle was supported by probable cause and the lack of a search warrant was excused by the exigent circumstances and R.C. 2933.33(A).

{¶23} In sum, we conclude that law enforcement, while properly on the property, observed in open view an active one-pot methamphetamine lab inside the vehicle. This

observation coupled with the information that methamphetamine was being used and manufactured at the location, constituted probable cause that methamphetamine was being produced in the vehicle. Furthermore, given the volatile and flammable nature of clandestine methamphetamine labs and the enactment of R.C. 2933.33(A), we conclude that the warrantless search of the vehicle was proper under the exigent circumstance exception to the warrant requirement. Accordingly, the trial court did not err in overruling Scroggins's motion to suppress evidence, and Scroggins's first assignment of error is overruled.

## B. Second Assignment of Error: Juror Impartiality

{¶24}  In his second assignment of error, Scoggins contends that he was denied his right to a fair trial because he had to use peremptory challenges to remove four jurors who he asserts should have been removed for cause. Scoggins argues that because he had to use peremptory challenges in this way, he was denied the effective use of his challenges and was thus denied a fair trial.

{¶25}  In the case sub judice, Scoggins moved to strike five jurors for cause. When the trial court refused to remove the jurors for cause, Scoggins used four of his five peremptory challenges to remove four of the challenged jurors. The fifth peremptory challenge was used on a juror that had not been previously challenged for cause. Scoggins then requested an additional peremptory challenge to remove the remaining juror he had previously moved to strike for cause (Juror Andrew Scott). The trial court refused to allow the additional peremptory challenge.

{¶26}  In addressing a prejudice claim similar to Scoggins's, the Ohio Supreme Court stated as follows:

> \* \* \* [A]ny claim that the jury was not impartial is not focused on the juror
>
> excused by the exercise of the peremptory challenge, but rather is focused on the
>
> jurors who ultimately sat. Therefore, in order to state a constitutional violation in
>
> this situation, the defendant must use all of his peremptory challenges and
>
> demonstrate that one of the jurors seated was not impartial.

*State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988), citing *Ross v. Oklahoma*, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

{¶27}  Here, Scoggins did exercise all of his peremptory challenges but he failed to demonstrate that one of the jurors seated was not impartial. Although Scoggins challenged Juror Andrew Scott for cause, and Scott was ultimately seated on the jury, the record does not support Scoggins's contention that Juror Scott was not impartial.

{¶28}  During the course of voir dire it was learned that Juror Scott was a cousin of Payton Scott, one of the State's witnesses in this case.[5] When questioned further, Juror Scott indicated that he was "not real close" to Payton Scott and did not know about the case. Juror Scott also stated that he could be fair and impartial despite his relation to Payton Scott, and that he would not give her testimony any more weight than any other witness. After being challenged for cause, Juror Scott again stated he could be fair and impartial.

{¶29}  R.C. 2945.25(D) provides that a prospective juror may be challenged for cause if they are "related by consanguinity or affinity within the fifth degree" to the victim of the crime, the alleger, or to the defendant. "There is no [statutory] provision that a potential juror would be disqualified for being related to a witness." *Nolan v. Conseco Health Ins. Co.*, 7th Dist. Jefferson Nos. 07JE30 & 07JE31, 2008-Ohio-3332, ¶ 142. Furthermore, "[a] trial court has broad

---

[5] Juror Scott may have also been a cousin of Charles Wooten, another one of the State's witnesses.

discretion in determining a prospective juror's ability to be impartial." *State v. Maxwell*, 139

Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 94. Here, the trial court found based on Juror

Scott's answers that he could be a fair and impartial juror. We think that conclusion is

reasonable.

{¶30}   Thus, because Scoggins has failed to demonstrate that one of the seated jurors was

not impartial, we overrule his second assignment of error.

### C. Third Assignment of Error: Alleged Discovery Violations

{¶31}   In his third assignment of error, Scoggins contends that the trial court erred by

overruling his request to exclude the testimony of two of the State's witnesses: James

Cunningham and Payton Scott. Specifically, Scoggins argues that the State violated Criminal

Rule 16 by failing to properly disclose the witnesses; by failing to disclose Scott's prior felony

conviction; and by failing to produce Cunningham's witness statement. Given these purported

violations, Scoggins argues that the witnesses' testimony should have been excluded.

{¶32}   The admission of evidence is within the sound discretion of the trial court. *State v.

Jackson,* 4th Dist. Washington No. 12CA16, 2013–Ohio–2628, ¶ 16; *State v. Dixon,* 4th Dist.

Scioto No. 09CA3312, 2010–Ohio–5032, ¶ 33, citing *State v. Sage,* 31 Ohio St.3d 173, 510

N.E.2d 343, (1987), paragraph two of the syllabus. An abuse of discretion involves more than an

error of judgment; it connotes an attitude on the part of the court that is unreasonable,

unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.,* 63 Ohio

St.3d 498, 506, 589 N.E.2d 24 (1992); *Wilmington Steel Products, Inc. v. Cleveland Elec.

Illuminating Co.,* 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). When applying the abuse of

discretion standard, a reviewing court is not free to merely substitute its judgment for that of the

trial court. *In re Jane Doe 1,* 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991), citing *Berk v.*

*Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). *Accord State v. Huff*, 4th Dist. Scioto No. 14CA3596, 2015-Ohio-5589, ¶ 12.

{¶33}  Furthermore, the control of discovery and sanctions for violations of that process are generally left to the discretion of the trial court. *State v. Bennington,* 4th Dist. Adams No. 12CA956, 2013–Ohio–3772, ¶ 28, citing *State v. Craig,* 4th Dist. Gallia No. 01CA8, 2002 WL 1666225, ¶ 33 (Mar. 26, 2002); *see also State v. Otte,* 74 Ohio St.3d 555, 563, 660 N.E.2d 711 (1996). *Accord Huff*, at ¶ 13.

**1. James Cunningham**

{¶34}  Prior to James Cunningham taking the witness stand, Scoggins requested that the trial court exclude his testimony because the State had allegedly not disclosed him as a witness until a week prior to trial. Furthermore, Scoggins's counsel represented to the trial court that he had interviewed Cunningham and that Cunningham could not recollect pertinent dates relevant to the case. Thus, Scoggins argued that his testimony should be excluded because he did not have personal knowledge of the events. Finally, Scoggins argued that Cunningham had provided a witness statement to law enforcement and that the statement had not been produced or presented to the defense during the course of discovery. The trial court denied Scoggins's request, and Cunningham testified at trial.

{¶35}  Crim.R. 16 imposes on the prosecutor a duty to disclose certain information upon a proper discovery request made by the defendant and this includes discovery of witness names, addresses, and records of criminal convictions.  Crim.R. 16(I); Crim.R. 16(B)(2). The duty to disclose information pursuant to a proper discovery request is continuous. Crim.R. 16(A). Further, Crim.R. 16(L), which governs regulation of discovery, provides as follows:

(1) The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶36} First, we note that the record does not demonstrate that Cunningham was only disclosed to the defense a week before trial. Rather, the State filed a supplemental response to discovery on August 4, 2016, which listed Cunningham as a witness and included his address. Thus, Cunningham was disclosed two and half weeks prior to trial and a violation of Crim.R. 16 did not occur in this respect.

{¶37} Next, Scoggins argues that he was completely taken by surprise when Cunningham took the stand at trial and made statements that contradicted statements he had previously made to defense counsel during trial preparations. He argues that he was prejudiced because the State never produced Cunningham's written statement to the defense during discovery, and he could have used the statement to impeach Cunningham's credibility.

{¶38} Crim.R. 16(B)(7) requires the disclosure of "[a]ny written or recorded statements by a witness in the state's case-in-chief, or that it reasonably anticipates calling as a witness in rebuttal." However, a writing or recording is only a statement for purposes of Crim.R. 16 if the witness prepared, signed, or adopted the statement; or if it is a substantially verbatim recital of the witness's statement written in a continuous, narrative form. *State v. Cunningham,* 105 Ohio St.3d 197, 2004–Ohio–7007, 824 N.E.2d 504, ¶ 44; *State v. Phillips,* 4th Dist. Pickaway Nos.

89–CA–32 & 89 CA–33, 1992 WL 42790, *5 (Mar. 5, 1992); *State v. Johnson,* 62 Ohio App.2d 31, 403 N.E.2d 1003 (6th Dist.1978), paragraph one of the syllabus; *State v. Moore,* 74 Ohio App.3d 334, 340, 598 N.E.2d 1224 (10th Dist.1991). Conversely, notes taken by a prosecutor, which are not reviewed, adopted or signed by the witness, do not constitute discoverable statements within the meaning of Crim.R. 16. *State v. Henry,* 37 Ohio App.3d 3, 523 N.E.2d 877 (6th Dist.1987), paragraph three of the syllabus. In fact, the *Henry* court concluded that prosecutor notes of witness interviews are work product, not witness statements. *Id.* at 8. The General Assembly has expressly declared work product non-discoverable under Crim.R. 16. *See* Crim.R. 16(J)(1) ("The following items are not subject to disclosure under this rule: (1) Materials subject to the work product protection. Work product includes, but is not limited to, reports, memoranda, or other internal documents made by the prosecuting attorney or defense counsel, or their agents in connection with the investigation or prosecution or defense of the case; * * *."). Moreover, the General Assembly has made clear that a document prepared by a person other than the witness is not a witness statement unless "explicitly adopted by the witness." Crim.R. 16(B)(6).

{¶39}  Upon reviewing the record in the case sub judice, it is clear that the document at issue contains the notes of a conversation between Cunningham, an assistant prosecutor, and an investigator. This discussion during Cunningham's trial preparation was not reduced to written form prepared, adopted, or signed by Cunningham – and thus did not constitute a written statement. Rather, the document contained attorney notes made during witness preparation and was clearly work product expressly protected from disclosure.

{¶40}  Even if we were to assume, arguendo, that the State's failure to disclose the document is in fact a Crim.R. 16 violation; we would still conclude that the trial court did not

abuse its discretion by denying Scoggins's request to exclude the testimony. Prosecutorial violations of Crim.R. 16 result in reversible error only when there is a showing that (1) the violation was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice. *State v. Jackson,* 107 Ohio St.3d 53, 2005–Ohio–5981, 836 N.E.2d 1173, ¶ 131; *State v. Scott,* 4th Dist. Adams No. 05CA809, 2006–Ohio–3527, ¶ 16.

{¶41} Here, disclosure of the document prior to trial would not have aided Scoggins's defense. The State provided Scoggins with Cunningham's name and contact information well in advance of trial. The defense contacted Cunningham and conducted its own pretrial interview. Plus, Scoggins had the opportunity to cross-examine Cunningham and to challenge the reliability of his testimony by confronting Cunningham with his prior statements made at the pretrial interview with defense counsel. In short, Scoggins has failed to indicate how prior knowledge of the document would have aided his defense.

{¶42} In sum, the State did not violate Crim.R. 16 with regards to witness Cunningham. Alternatively, even if a Crim.R. 16 violation did occur, it did not rise to the level of reversible error. Therefore, the trial court's decision to deny Scoggins's request to exclude the testimony was not an abuse of discretion.

**2. Payton Scott**

{¶43} Once Scott was on the witness stand, but prior to commencement of her testimony, defense counsel objected stating: "I'm not sure who this is?" It also became clear that defense counsel was unaware if Scott had a prior criminal record. Ultimately, Scott was permitted to testify. On appeal, Scoggins contends that Scott's testimony should have been

excluded because she was never properly disclosed as a potential witness and because her criminal record was never properly disclosed in pretrial discovery.

{¶44} As discussed above, the State is required to disclose certain information upon a proper discovery request made by the defendant and this includes discovery of witness names, addresses, and records of criminal convictions. Crim.R. 16(I); Crim.R. 16(B)(2). Here, in its very first response to defendant's request for discovery, filed March 31, 2016, the State listed Scott in its list of witnesses expected at trial. The disclosure included Scott's address, and noted that it was unknown whether she had a criminal record. Then, in a supplemental response to discovery, filed August 16, 2016, the State again listed Scott as an intended witness. The disclosure included an updated address, and also revealed that Scott had a prior conviction for "Tampering w/ Evidence" in Scioto County, Ohio, Case Number 13CR431B. Thus, a review of the record reveals that the State complied with Crim.R. 16 and made the required disclosures as it pertains to Scott. Accordingly, the trial court did not abuse its discretion by denying Scoggins's request to exclude Scott's testimony.

{¶45} Based on the foregoing, we overrule Scoggins's third assignment of error.

### D. Fourth Assignment of Error: Motion for Mistrial/Prior Bad Acts

{¶46} In his fourth assignment of error, Scoggins contends that the trial court erred by denying his motion for a mistrial. Specifically, Scoggins argues that Scott and the prosecuting attorney examining Scott made improper remarks regarding prior bad acts that were inadmissible under Evid.R. 404(B).

{¶47} On direct examination, Scott testified that Scoggins visited the Wooten residence "daily" so he could "use meth and cook meth". She further testified that Scoggins and her brother, Charles Wooten, would often make methamphetamine "[a]cross the street in the woods.

They always carried duffle bags." On cross-examination, Scott clarified that she had also seen

the pair make methamphetamine "at the bottom of the driveway, [and] on the side of the house",

and that they "carried bags back and forth across the street, and in the woods and to their cars."

On re-direct, the prosecuting attorney phrased several questions with the lead "on the days they

made meth" or similar language. Defense counsel objected to the phrasing of those responses

and questions, but the trial court overruled the objections.

{¶48}  After Scott was done testifying, and outside the presence of the jury, defense

counsel moved for a mistrial. He argued that Scott's testimony that Scoggins and Wooten cook

meth daily was prejudicial. The trial court denied the motion. Now on appeal, Scoggins contends

that the trial court erred by denying his motion for a mistrial because the aforementioned

testimony of Scott, and the prosecutor's remarks, were inadmissible prior bad acts evidence in

violation of Evid.R. 404(B).

{¶49}  Whether or not to grant a mistrial is within the sound discretion of the trial court,

and its decision will not be reversed absent an abuse of that discretion. *State v. Koon*, 4th Dist.

Hocking No. 15CA17, 2016–Ohio–416, ¶ 26. "In general a mistrial should not be granted based

on an error or irregularity unless an accused's substantial rights are adversely affected." *Id.* at ¶

27.

{¶50}  Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not

admissible to prove the character of a person in order to show action in conformity therewith. It

may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident." Similarly, R.C.

2945.59 provides:

In any criminal case in which the defendant's motive or intent, the absence of

mistake or accident on his part, or the defendant's scheme, plan, or system in

doing an act is material, any acts of the defendant which tend to show his motive

or intent, the absence of mistake or accident on his part, or the defendant's

scheme, plan, or system in doing the act in question may be proved, whether they

are contemporaneous with or prior or subsequent thereto, notwithstanding that

such proof may show or tend to show the commission of another crime by the

defendant.

{¶51} "Evid.R. 404 codifies the common law with respect to evidence of other acts of wrongdoing. The rule contemplates acts that may or may not be similar to the crime at issue. If the other act is offered for some relevant purpose other than to show character and propensity to commit crime, such as one of the purposes in the listing, the other act may be admissible. Another consideration permitting the admission of certain other-acts evidence is whether the acts 'form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment' and are 'inextricably related' to the crime." (Citations omitted.) *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 13, quoting *State v. Curry,* 43 Ohio St.2d 66, 73, 330 N.E.2d 720 (1975). "Generally, evidence of other acts is admissible if it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), it is relevant when offered for that purpose, Evid.R. 401, and the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403." *State v. Kirkland,* 140 Ohio St.3d 73, 2014–Ohio–1966, 15 N.E.3d 818, ¶ 68, citing *State v. Williams,* 134 Ohio St.3d 521, 2012–Ohio–5695, 983 N.E.2d 1278, ¶ 20.

{¶52}   Upon reviewing the record, we find that the trial court did not abuse its discretion by denying Scoggins's motion for a mistrial. Scoggins's prior acts were at least arguably admissible to prove intent and identity under Evid.R. 404(B). The testimony that Scoggins's had a history of producing methamphetamine at the Wooten residence, and often used a duffle or tool bag to carry the methamphetamine lab and materials, is useful evidence in establishing the identity of the perpetrator because they "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment" and which are "inextricably related to the alleged criminal act." *See State v. Lowe,* 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994). The testimony was also useful in establishing the identity of the perpetrator because they established a *modus operandi* identifiable with Scoggins. *See State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), syllabus ("Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)."); *State v. Smith,* 49 Ohio St.3d 137, 141, 551 N.E.2d 190 (1990) (" 'Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense."); *Lowe,* paragraph one of the syllabus ("To be admissible to prove identity through a certain *modus operandi,* other-acts evidence must be related to and share common features with the crime in question.") Here, the other acts evidence share common characteristics with the facts of this case, such that, it is useful in identifying the perpetrator. For instance, Scott testified that Scoggins commonly utilized the Wooten residence to manufacture methamphetamine, and that he often used a tool bag to carry his methamphetamine making supplies. Furthermore, the testimony is useful to prove Scoggins's intent to commit the offenses charged. Finally, we

conclude that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence.

{¶53} In light of all of the foregoing, we find that the trial court did not err by denying Scoggins's motion for a mistrial. Scoggins's fourth assignment of error is overruled.

### E. Fifth Assignment of Error: Sufficiency of the Evidence

{¶54} In his fifth assignment of error, Scoggins contends that there is insufficient evidence to support his convictions for aggravated possession of drugs/methamphetamine, aggravated trafficking of methamphetamine, and endangering children.

{¶55} "When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt." *State v. Davis,* 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 12. "The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *Id.,* citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, when we review a sufficiency of the evidence claim in a criminal case, we review the evidence in a light most favorable to the prosecution. *State v. Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

**1. Aggravated Possession of Drugs/Methamphetamine and Aggravated Trafficking of Methamphetamine**

{¶56}  Scoggins contends that there is insufficient evidence to convict him for aggravated possession of methamphetamine, and aggravated trafficking of methamphetamine, because all that was recovered by law enforcement was a liquid containing some amount of methamphetamine; not methamphetamine in its raw, useable, or sellable form.

{¶57}  It is undisputed that law enforcement discovered the one-pot methamphetamine labs while the labs were still in the process of manufacturing methamphetamine. Thus, what was recovered was a liquid substance. The liquid substance was delivered to the Ohio Bureau of Criminal Investigation ("BCI"), where further testing confirmed that the liquid contained methamphetamine. At trial, both law enforcement officers and a scientist from BCI testified the liquid substance was not yet in its final, useable form.

{¶58}  Scoggins was charged and found guilty of aggravated possession of drugs/methamphetamine, in violation of R.C. 2925.11, which provides, in pertinent part: "(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Furthermore, R.C. 2925.11(C)(1) reads: "If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated possession of drugs. * * *." Scoggins was also charged and found guilty of aggravated trafficking of methamphetamine, in violation of R.C. 2925.03. R.C. 2925.03 provides, in pertinent part: "(A) No person shall knowingly do any of the following: * * * (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or

has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." Furthermore, R.C. 2925.03(C)(1) reads: "If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, L.S.D., heroin, hashish, and controlled substance analogs, whoever violates division (A) of this section is guilty of aggravated trafficking in drugs. * * *."

{¶59} Methamphetamine is defined in the Revised Code as "any salt, isomer, or salt of an isomer of methamphetamine, or any compound, mixture, preparation, or substance containing methamphetamine or any salt, isomer, or salt of an isomer of methamphetamine." R.C. 2925.01(II). In Ohio, methamphetamine is treated as a Schedule II controlled substance. *See* R.C. 3719.41.

{¶60} Recently, the Eleventh District Court of Appeals was taxed with determining whether a liquid precursor to methamphetamine is in fact methamphetamine as defined by Ohio statutory law. *See State v. Thomason*, 11th Dist. Ashtabula No. 2016-A-0027, 2017-Ohio-7447. In *Thomason*, the Eleventh District stated, in pertinent part:

> R.C. 2925.01(I)(I) presupposes that, regardless of the conditional medium, a
>
> compound, mixture, preparation, or substance *must* contain methamphetamine to
>
> be considered, as a matter of law, methamphetamine. Although a precursor, by
>
> definition, is the substance *from which* methamphetamine is formed, there was
>
> still some amount of methamphetamine in the mixture. And, while the precursor
>
> may not have been usable methamphetamine *and* its weight contributed to a more
>
> elevated charge, the unambiguous language of R.C. 2925.01(I)(I) states that a
>
> mixture or substance that contains methamphetamine is methamphetamine. The

precursor (qua mixture, substance, or preparation) seized during the search

contained some undisclosed amount of methamphetamine and, as a result, it is

methamphetamine as defined by the legislature. * * *

(Emphasis sic.) *Id*. at ¶ 33.

{¶61}  We agree with our sister district that the unambiguous language of R.C.

2925.01(I)(I) states that a mixture or substance that contains methamphetamine is

methamphetamine as a matter of law. Accordingly, because the evidence in this case establishes

that the liquid recovered from the one-pot labs contained some amount of methamphetamine,

sufficient evidence existed to support the aggravated drug possession and aggravated drug

trafficking charges.

**2. Endangering Children**

{¶62}  Scoggins also contends that there is insufficient evidence to support his

conviction for endangering children because he did not allow a person under the age of 18 to be

on the same parcel of real estate as the methamphetamine labs. We disagree.

{¶63}  Scoggins was indicted and found guilty of endangering children in violation of

R.C. 2919.22(B)(6), which provides:

(B) No person shall do any of the following to a child under eighteen years of age

or a mentally or physically handicapped child under twenty-one years of age:

* * *

(6) Allow the child to be on the same parcel of real property and within one

hundred feet of, or, in the case of more than one housing unit on the same parcel

of real property, in the same housing unit and within one hundred feet of, any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041 of the Revised Code that is the basis of the violation of this division.

{¶64} At trial, Scott, Wooten, and two law enforcement officers testified that Scott's 7 month-old child was present in the Wooten residence at the time of the incident. Scott and Wooten further testified that Scoggins was a daily visitor to the property, and knew that Scott's minor child also resided there. Furthermore, Scott testified that on the day of the incident Scoggins ran through the residence just prior to the arrival of law enforcement, and had a brief interaction with Scott who was with the child. Finally, "[t]he statute does not require the [S]tate to prove [that defendant] had authority or the ability to control the child * * *." *State v. Burns*, 2016-Ohio-7375, 72 N.E.3d 1068, ¶ 35 (5th Dist.). Accordingly, after viewing the evidence in the light most favorable to the prosecution, there existed sufficient evidence for the trier of fact to conclude that Scoggins allowed a minor child to be present on the property where the methamphetamine labs were located.

{¶65} For the aforementioned reasons, Scoggins's fifth assignment of error is overruled.

**F. Sixth Assignment of Error: Manifest Weight of the Evidence**

{¶66} In his sixth assignment of error, Scoggins contends that his conviction for the illegal manufacture of methamphetamine is against the manifest weight of the evidence; and that the vicinity of a juvenile enhancements placed upon the counts of aggravated trafficking of

methamphetamine, illegal manufacture of methamphetamine, and illegal assembly or possession of chemicals for the manufacture of drugs are against the manifest weight of the evidence.

{¶67} "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Topping,* 4th Dist. Lawrence No. 11CA6, 2012–Ohio–5617, ¶ 60. "The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *Id.*, citing *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶68} "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *Id.* "A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction." (Quotations omitted.) *Id.* at ¶ 61.

**1. Illegal Manufacture of Methamphetamine**

{¶69} Scoggins, in the case sub judice, was found guilty of the illegal manufacture of methamphetamine in violation of R.C. 2925.04(A). R.C. 2925.04(A) states, in relevant part, as follows: "No person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." Scoggins argues that there was not competent and credible evidence to establish that the methamphetamine labs and associated materials belonged to him, or that he otherwise engaged in the production of methamphetamine.

{¶70}  In the case sub judice, there was clear evidence that three active one-pot methamphetamine labs were present inside of the vehicle, as well as additional materials used to manufacture methamphetamine. There was also testimony from Breech, Scoggins's girlfriend, that Scoggins was driving the vehicle in which the methamphetamine labs were discovered on the day of the incident. Furthermore, both Scott and Wooten testified at trial that Scoggins regularly drove the vehicle. Scott testified that the methamphetamine labs and chemicals found in the vehicle belonged to Scoggins; and that Scoggins ran from the property just prior to law enforcement's arrival. Wooten testified that the tool bag, which contained two active one-pot labs as well as materials used to manufacture methamphetamine, did not belong to him. Two law enforcement officers testified that Scoggins's wallet with his driver's license, as well as a cell phone belonging to Scoggins was also found inside the vehicle.

{¶71}  Based on this evidence, we cannot say that the verdict here was against the manifest weight of the evidence. The State presented credible evidence that Scoggins had a possessory interest over the vehicle and its contents and that he was inside of the vehicle on the day in question. Thus, the evidence, if believed, could convince reasonable jurors that Scoggins was responsible for manufacturing the methamphetamine.

{¶72}  We recognize that Scott and Wooten testified that they are drug users with criminal records. We also recognize that they may have had an incentive to testify in this case. Nonetheless, Scott's and Wooten's credibility was a matter for the jury to decide. *See State v. Fisher*, 4th Dist. Jackson No. 11CA10, 2012-Ohio-6260, ¶ 9 ("[T]he weight of the evidence and witness credibility are issues that the trier of fact must determine. * * * The rationale for this view is that the trier of fact * * * is in the best position to view the witnesses and to observe their demeanor, gestures and voice inflections and to use those observations to weigh credibility. * * *

Consequently, a jury may choose to believe all, part or none of the witness testimony.") The jury apparently found Scott's and Wooten's testimony, or at least portions of it, to be credible. Even if the jury did not find this testimony to be credible, more than enough evidence exists to support the verdict. In other words, we do not believe that the evidence adduced at trial weighs heavily against the conviction for the illegal manufacture of methamphetamine, or that the jury clearly lost its way.

**2. Vicinity of a Juvenile Enhancement**

{¶73}   As to the vicinity of a juvenile enhancement, Scoggins contends that the State failed to put forth credible evidence that the offenses were committed within 100 feet of a juvenile.

{¶74}   As previously indicated, the jury determined that the aggravated trafficking of methamphetamine, illegal manufacture of methamphetamine, and the illegal assembly offenses were committed in the vicinity of a juvenile. These offenses allow for the enhancement of the specified felony level if the offense occurs in the vicinity of a juvenile. *See* R.C. 2925.03(C)(1)(b)-(d); R.C. 2925.04(C)(3)(b); R.C. 2925.041(C).

{¶75}   An offense is committed in the vicinity of a juvenile when the offender "commits the offense within one hundred feet of a juvenile or within the view of a juvenile, regardless of whether the offender knows the age of the juvenile, whether the offender knows the offense is being committed within one hundred feet of or within view of the juvenile, or whether the juvenile actually views the commission of the offense." R.C. 2925.01(BB). A "juvenile" is defined as "a person under eighteen years of age." R.C. 2925.01(N).

{¶76}   Here, two law enforcement officers testified at trial that they estimated the vehicle with the active one-pot methamphetamine labs to be no more than 50 feet from the residence in

which the minor child was present. The State also admitted as evidence photographs of the scene, including one photograph showing the vehicle and the residence; thus allowing the jury to reach its own conclusion regarding distance. There was also no evidence contradicting the estimates made by law enforcement.

{¶77}   Based upon the evidence presented, we find that the jury's determinations regarding the juvenile enhancements were supported by sufficient evidence and the jury reasonably found the enhancements proven beyond a reasonable doubt.

{¶78}   Scoggins's sixth assignment of error is overruled.

### G. Seventh and Eighth Assignments of Error: Merger Doctrine

{¶79}   Given the similarity of the arguments, we will consider Scoggins's seventh and eighth assignments of error jointly. In his seventh assignment of error, Scoggins contends that the trial court erred when it failed to merge the offense of illegal manufacture of methamphetamine with the offense of illegal assembly or possession of chemicals for the manufacture of drugs. He argues that it is impossible to manufacture methamphetamine without possessing the materials to do it, and that he was not alleged to have committed the offenses on separate days, locations, or times. In his eighth assignment of error, Scoggins contends that the trial court erred by failing to merge the endangering children offense with the offenses of aggravated trafficking, illegal manufacture of methamphetamine, and illegal assembly or possession of chemicals for the manufacture of drugs, which all included a juvenile enhancement. Scoggins timely made these arguments during his sentencing hearing, but the trial court ultimately determined that only the aggravated trafficking and aggravated possession counts merged with the illegal manufacture count. Thus, the trial court issued separate sentences on the illegal manufacture count, the illegal assembly count, and the endangering children count.

{¶80} "An appellate court should apply a de novo standard of review in reviewing a trial

court's R.C. 2941.25 merger determination." *State v. Williams,* 134 Ohio St.3d 482, 2012-Ohio-

5699, 983 N.E.2d 1245, ¶ 28. " '[T]he appellate court must * * * independently determine,

without deference to the conclusion of the trial court, whether the facts satisfy the applicable

legal standard.' " *Id.* at ¶ 26, quoting *Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797

N.E.2d 71, at ¶ 8. The reviewing court owes no deference to the trial court's application of the

law to the particular facts of the case being reviewed. *Id.*

{¶81} R.C. 2941.25, Ohio's multiple counts statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or

more allied offenses of similar import, the indictment or information may contain

counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar

import, or where his conduct results in two or more offenses of the same or

similar kind committed separately or with a separate animus as to each, the

indictment or information may contain counts for all such offenses, and the

defendant may be convicted of all of them.

{¶82} The statute codifies the protections of the Double Jeopardy Clause of the Fifth

Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution,

which prohibits the imposition of multiple punishments for the same offense. *State v.*

*Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. In other words, upon

finding one or more counts to constitute two or more allied offenses of similar import, R.C.

2941.25(A) requires that the convictions be merged for the purposes of sentencing and that the

defendant only be sentenced on one of the counts. *State v. Whitfield,* 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 5.

{¶83} The Ohio Supreme Court recently clarified the applicable analysis in determining when two offenses merge under R.C. 2941.25 in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. "In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors – the conduct, the animus, and the import." *Id*. at paragraph one of the syllabus. "Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus." *Id*. at paragraph three of the syllabus.

**1. Whether the illegal assembly or possession of chemicals count should have merged with the illegal manufacture of methamphetamine count for purposes of sentencing**

{¶84} This Court has recently addressed this issue in *State v. Evans-Goode*, 4th Dist. Meigs No. 15CA10, 2016-Ohio-5361. *Evans-Goode* is a case involving charges of illegal assembly or possession of chemicals, as well as manufacturing of methamphetamine, which stemmed from a single encounter with law enforcement. *Id*. at ¶ 34. In *Evans-Goode*, we concluded that the two counts did not merge where the record indicated that "law enforcement found an abundance of additional ingredients scattered throughout the residence 'over and above' what was used for the * * * cook." *Id.* at ¶ 31.

{¶85} Similar to the facts before us in *Evans-Goode, supra*, the record evidence in the case sub judice indicates that while three active one-pot methamphetamine labs were found in the vehicle, various precursor items used in the manufacture of methamphetamine were also

present in the vehicle in an amount over and above what was used in the three labs. Specifically, law enforcement officers who conducted the search of the vehicle clearly testified that the vehicle contained quantities of chemicals over and above those used in the manufacture of the three one-pots that were located in the vehicle.

{¶86} Detective Sergeant Joshua Justice of the Southern Ohio Drug Task Force testified that the vehicle contained a full container of Coleman camp fuel, a container of lye that was a quarter full, a container of liquid drain cleaner that was halfway full, a container of rock salt that was a quarter full, three full containers of starting fluid, coffee filters, plastic tubing, and three instant cold packs. Detective Sergeant Justice further testified that these materials are used to manufacture methamphetamine, and that the active one-pots found in the vehicle were past the stage of needing all these materials except for the rock salt and the liquid drain cleaner. Detective Bower testified similarly.

{¶87} We conclude that the record evidence indicates that Scoggins was in possession of several materials used to manufacture methamphetamine over and above the quantities used in the methamphetamine manufactured by the three active one-pots. Thus, we conclude that the offenses at issue were committed with a separate animus and are not allied offenses of similar import subject to merger. As such, we cannot conclude that the trial court erred by failing to merge the offense of illegal manufacture of methamphetamine with the offense of illegal assembly or possession of chemicals for the manufacture of drugs for the purposes of sentencing.

**2. Whether the endangering children count should have merged with the remaining counts for purposes of sentencing**

{¶88} In his eighth assignment of error, Scoggins argues that because the offenses for the illegal manufacture of methamphetamine, the illegal assembly or possession of chemicals,

and aggravated trafficking of methamphetamine were enhanced by the fact that they were committed in the vicinity of a juvenile, the offense of endangering children should be merged with those offenses for purposes of sentencing. In other words, he argues that he was punished multiple times for the same conduct because the element enhancing his illegal manufacture of methamphetamine offense, illegal assembly offense, and aggravated trafficking of methamphetamine offense to higher degree felonies – the drug involved is methamphetamine and the offense was committed in the vicinity of a juvenile – also resulted in his offense of endangering children. We disagree.

{¶89} This Court has previously held that: "[W]hen the drug is methamphetamine and the offense is committed in the vicinity of a juvenile, the General Assembly intended that a defendant convicted of illegal manufacture of drugs could also be convicted of endangering children and sentenced for both crimes." *State v. Greer*, 4th Dist. Jackson No. 13CA2, 2014-Ohio-2174, ¶ 2. In *Greer*, we noted that an analysis of whether the offenses of illegal manufacture of drugs and endangering children were allied offenses of similar import was unnecessary because the endangering children statute clearly indicated the legislature's intent to allow multiple punishments for violations of that statute and the offense of illegal manufacturing of drugs when the drug is methamphetamine and the offense was committed within 100 feet of a child. *Id.* at ¶¶ 10-11; *see also State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 10 (saying that it is not necessary to apply the allied offense test when the legislature's intent is clear from the language of the statute).

{¶90} R.C. 2925.04(A) prohibits any person from knowingly manufacturing or otherwise engaging in any part of the production of a controlled substance. If the drug involved is methamphetamine, the offense of illegal manufacture of drugs is a felony of the first degree "if

the offense was committed in the vicinity of a juvenile, in the vicinity of a school, or on public premises." R.C. 2925.04(C)(3)(b). Likewise, R.C. 2925.041(A) prohibits any person from knowingly assembling or possessing one or more chemicals that may be used to manufacture a schedule I or II controlled substance with the intent to manufacture. The offense of illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree "[i]f the offense was committed in the vicinity of a juvenile or in the vicinity of a school * * *." R.C. 2925.041(C). Furthermore, if the offense of illegal assembly or possession of chemicals for the manufacture of drugs is a felony of the second degree and the chemical or chemicals assembled or possessed in committing the violation may be used to manufacture methamphetamine, the court must impose a mandatory prison term. R.C. 2925.041(C)(2).

{¶91}  R.C. 2919.22, which defines the offense of endangering children, specifies in subdivision (B) that "[n]o person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: * * * (6) Allow the child to be on the same parcel of real property and within one hundred feet of * * * any act in violation of section 2925.04 or 2925.041 of the Revised Code when the person knows that the act is occurring, *whether or not any person is prosecuted for or convicted of the violation of section 2925.04 or 2925.041* of the Revised Code *that is the basis for the violation of this division*. (Emphasis added.)

{¶92}  The plain language of R.C. 2919.22(B)(6) authorizes an endangering children conviction regardless of whether the same conduct also results in a conviction for illegal manufacture of drugs under R.C. 2925.04 or illegal assembly or possession of chemicals for the manufacture of drugs under R.C. 2925.041. *See* Greer at ¶ 14. "These specific provisions were legislatively adopted in S.B. 58, effective August 2004, after the legislative adoption of the

general merger provision of R.C. 2941.25(A)." *Id.* "Insofar as these detailed provision conflict with the general provision in R.C. 2941.25(A), R.C. 2919.22(B)(6), [R.C. 2925.041] and 2925.04 prevail." *Id.*, citing *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 26, and *Chesapeake Exploration, L.L.C. v. Oil & Gas Comm.*, 135 Ohio St.3d 204, 2013-Ohio-224, 985 N.E.2d 480, ¶ 18.

{¶93}   Thus, based on our prior holdings and statutory interpretation, we conclude that the General Assembly intended that a defendant convicted of illegal manufacture of methamphetamine in the vicinity of a juvenile and/or illegal assembly or possession of chemicals for the manufacture of methamphetamine in the vicinity of a juvenile could also be convicted of endangering children and sentenced for both crimes. Therefore, the multiple punishments in this case do not violate the constitutional prohibition against double jeopardy or the provisions of the Ohio allied offenses statute. Finally, we need not address whether merger of the endangering children offense and the aggravated trafficking of methamphetamine offense is appropriate, because Scoggins was not sentenced on the aggravated trafficking of methamphetamine offense.

{¶94}   Based on the foregoing, Scoggins's seventh and eighth assignments of error are overruled.

### H. Ninth Assignment of Error: Felony Sentencing

{¶95}   In his ninth assignment of error, Scoggins contends that the trial court erred in sentencing him. Specifically, he argues "the trial court erred in imposing consecutive prison terms amounting to twenty-two (22) years out of a possible twenty-five (25)".

{¶96}   When reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Brewer*, 2014–Ohio–1903, 11 N.E.3d 317, ¶ 33 (4th Dist.) ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second

step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated that '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion' "); *see also State v. Graham*, 4th Dist. Highland No. 13CA11, 2014–Ohio–3149, ¶ 31. R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either that "the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

{¶97} Here, it appears that the sentences Scoggins received were within the statutory range for each offense, thus it cannot be said that the length of the sentences are contrary to law. Further, with respect to the trial court's decision to order the sentences be served consecutively, under the tripartite procedure set forth in R.C. 2929.14(C)(4) for imposing consecutive sentences, the trial court had to find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of three circumstances specified in the statute applies. *See generally State v. Baker*, 4th Dist. Athens No. 13CA18, 2014–Ohio–1967, ¶¶ 35–36. The trial court is required to make these findings at the sentencing hearing and to incorporate its findings in its sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, syllabus. "The trial court need not use talismanic words to comply with R.C. 2929.14(C)(4), but it must be clear from the record that the trial court actually made the required findings." *State v. Campbell*, 4th Dist. Adams No. 13CA969, 2014–Ohio–3860, ¶ 25.

{¶98} Furthermore, the trial court does not have any obligation under R.C. 2929.14(C)(4) to state reasons to support its findings to impose consecutive sentences. *Bonnell* at syllabus ("In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings").

{¶99} With the foregoing in mind, we reject Scoggins's assertion that consecutive sentences were unwarranted. Here, the trial court's sentencing entry stated that it had considered the principles and purposes of sentencing under R.C. 2929.11(A)(B) and (C), had considered and balanced the seriousness and recidivism factors under R.C. 2929.12(B)–(E), had considered the factors in R.C. 2929.13, and had found a presumption in favor of prison. The trial court further found, correctly, that the convictions for the illegal manufacture of methamphetamine, in the vicinity of a juvenile, and illegal assembly or possession of materials for the manufacture of methamphetamine, in the vicinity of a juvenile, required mandatory prison sentences. Finally, the trial court expressly found at the sentencing hearing, and in its sentencing entry, (1) that consecutive sentences were necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences were not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that the defendant's criminal history shows that consecutive terms are needed to protect the public from future crime by the defendant. Thus, the trial court made the required findings before imposing consecutive sentences and further, the trial court was under no obligation to state its reasons for making its findings.

{¶100} In short, the trial court considered all of the pertinent statutes, balanced all of the pertinent factors, and made all of the necessary findings before imposing consecutive sentences. Accordingly, we cannot conclude that the imposition of consecutive sentences was contrary to law or unsupported by the record. Scoggins's ninth assignment of error is overruled.

### I. Plain Error - Verdict Forms and Sentencing Entry

{¶101} After reviewing the record, we have discovered a matter that must be addressed related to the verdict forms and sentencing entry. Specifically, as will be more fully discussed, infra, the two verdict forms relating to the offenses of aggravated trafficking of methamphetamine and aggravated possession of drugs/methamphetamine, and the sentencing entry memorializing the jury's findings on those offenses, incorrectly state the degree of the offenses. As such, we have decided to sua sponte invoke the "plain error" rule. Crim.R. 52(B) states that although a defendant may have failed to raise a timely objection to an error affecting a substantial right, courts may notice the error.

{¶102} For a reviewing court to find plain error: (1) there must be an error, i.e., "a deviation from a legal rule"; (2) the error must be plain, i.e., "an 'obvious' defect in the trial proceedings"; and (3) the error must have affected "substantial rights," i.e., it must have affected the outcome of the proceedings. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Furthermore, the Ohio Supreme Court has admonished courts that notice of plain error under Crim.R. 52(B) is to be taken " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.,* quoting *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶103} R.C. 2945.75(A)(2) provides:

> When the presence of one or more additional elements makes an offense one of
> more serious degree: * * * A guilty verdict shall state either the degree of the
> offense of which the offender is found guilty, or that such additional element or
> elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of
> the least degree of the offense charged.

*See also State v. Pelfrey,* 112 Ohio St.3d 422, 2007-Ohio-256, 860 N.E.2d 735, syllabus ("[A] verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of criminal offense."). Similarly, when a verdict form includes some aggravating elements, but not others, a defendant may only be convicted of the least degree of the offense including those elements in the verdict form. *See State v. Ligon,* 179 Ohio App.3d 544, 2008-Ohio-6085, 902 N.E.2d 1011, ¶ 20 (3d Dist.).

{¶104} Here, the first verdict form at issue reads: "We, the jury, having been duly impaneled, find beyond a reasonable doubt, the defendant, Ronald Scoggins, Guilty of Count 1 of the indictment, Aggravated Trafficking of Methamphetamine, a violation of Ohio Revised Code Section 2925.03(A)(2), 2925.03(C)(1)(f)." The verdict form further reads: "We, the jury, further find beyond a reasonable doubt the drugs were: * * * Equal to or exceeding 5 times the bulk amount and less than 50 times the bulk amount. We, the jury further find beyond a reasonable doubt that the offense was * * * committed in the vicinity of a juvenile." The second verdict form reads: "We, the jury, having been duly impaneled, find beyond a reasonable doubt, the defendant, Ronald Scoggins, Guilty of Count 2 of the indictment, Aggravated Possession of Drugs/Methamphetamine, a violation of Ohio Revised Code Section 2925.11(A), 2925.11(C)(1)(e), a felony of the first degree." The verdict form further reads: "We, the jury,

further find beyond a reasonable doubt that the weight of the drugs were: * * * Equal to or

exceeding 5 times bulk amount but less than 50 times bulk amount[.]"

{¶105} Likewise, the trial court's sentencing entry states as follows:

The Court finds that the defendant pleaded not guilty and that the defendant has

been convicted by the jury of **Count 1: Aggravated Trafficking of**

**Methamphetamine,** in violation of Ohio Revised Code Section 2925.03 (A)(2),

2925.03 (C)(1)(f), a felony of the first degree. The Court finds that the Jury after

due deliberation found beyond a reasonable doubt that the drugs were **equal to or**

**exceeding 5 times bulk amount and less than 50 times bulk amount.** The

Court finds that the Jury after due deliberations further found the offense **was**

**committed in the vicinity of a juvenile. Count 2: Aggravated Possession of**

**Drugs/Methamphetamine,** in violation of Ohio Revised Code Section 2925.11

(A), 2925.11 (C)(1)(e), a felony of the first degree. The Court finds that the Jury

after due deliberation found beyond a reasonable doubt that the weight of the

drugs **were equal to or exceeding 5 times the bulk amount but less than 50**

**times bulk amount.** * * *

(Emphasis sic.)

{¶106} Here, with regards to the aggravated trafficking of methamphetamine count

(Count 1), the weight range the jury selected on the verdict forms supports a finding of guilt

under R.C. 2925.03(A)(2) / 2925.03(C)(1)(d); not under R.C. 2925.03(C)(1)(f) as stated in the

verdict form and on the sentencing entry.[6] However, because the verdict form also includes a

---

[6] R.C. 2925.03(C)(1)(d) provides: "[I]f the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated trafficking in drugs is a felony of the second degree * * *." R.C. 2925.03(C)(1)(f) provides: "If the amount of the drug involved equals or exceeds one hundred times the bulk amount * * * aggravated trafficking in drugs is a felony of the first degree * * *."

finding that the offense was committed in the vicinity of a juvenile, the offense is ultimately a felony of the first degree. *See* R.C. 2925.03(C)(1)(d) ("If the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, aggravated trafficking in drugs is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.") However, a distinction between a finding of guilt under R.C. 2925.03(C)(1)(d) and R.C. 2925.03(C)(1)(f) is still necessary in this case, because a finding of guilt under R.C. 2925.03(C)(1)(f) requires that the defendant be classified as a major drug offender, whereas a conviction under R.C. 2925.03(C)(1)(d) does not. *Compare* R.C. 2925.03(C)(1)(d) to R.C. 2925.03(C)(1(f).

{¶107} Likewise, with regards to the aggravated possession of drugs/methamphetamine count (Count 2), the weight range the jury selected on the verdict form supports a finding of guilt under R.C. 2925.11(A) / 2925.11(C)(1)(c); not under R.C. 2925.11(C)(1)(e) as stated in the verdict form and on the sentencing entry.[7] Thus, the weight range the jury selected on the verdict form includes the range for a second-degree felony, not a first-degree felony as reflected in the sentencing entry.

{¶108} The jury clearly found that Scoggins trafficked in and possessed methamphetamine in an amount that equals or exceeds five times the bulk amount but is less than fifty times the bulk amount. Therefore, Scoggins could only be convicted and sentenced under R.C. 2925.03(C)(1)(d) and R.C. 2925.11(C)(1)(c), i.e., the least degree of the offenses covered by the verdict forms.

---

[7] R.C. 2925.11(C)(1)(c) provides: "If the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount, aggravated possession of drugs is a felony of the second degree * * *." R.C. 2925.11(C)(1)(e) provides: "If the amount of the drug involved equals or exceeds one hundred times the bulk amount, aggravated possession of drugs is a felony of the first degree * * *."

{¶109} Accordingly, we conclude that the obvious errors in the verdict forms and the trial court's sentencing entry that incorrectly states that Scoggins was guilty under R.C. 2925.03(C)(1)(f) and R.C. 2925.11(C)(1)(e) in Counts 1 and 2 respectively, affected Scoggins's substantial rights and constitutes plain error. However, because those counts were merged with Count 3 - the illegal manufacturing of methamphetamine count - we conclude that Scoggins was never actually convicted of these counts. *See State v. Whitfield, supra*, at ¶ 12 ("[A] 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty."). Thus, we need not vacate any sentences, nor remand the matter for resentencing. Nevertheless, pursuant to App.R. 9(E), we instruct that the trial court issue a nunc pro tunc sentencing entry that reduces the degree of the offenses as to Counts 1 and 2 so as to accurately reflect the jury's verdict.[8]

### IV. Conclusion

{¶110} Having overruled all of Scoggins's assignments of error for the reasons stated above, we affirm the judgment of the trial court. As noted previously, the trial court should issue a nunc pro tunc sentencing entry that reduces the degree of the offenses as to Counts 1 and 2 so as to accurately reflect the jury's verdict.

JUDGMENT AFFIRMED.

---

[8] We note that trial courts retain continuing jurisdiction to correct clerical errors in judgments by nunc pro tunc entry to reflect what the court actually decided. *State v. Qualls*, 131 Ohio St.3d 499, 2012-Ohio-1111, 967 N.E.2d 718, ¶ 13.

Harsha, J., concurring in part and dissenting in part:

{¶111} I would not exercise our discretion to consider plain error where Scoggins does not raise it. *See State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 17–20 (appellate court need not consider plain error where appellant fails to timely raise plain-error claim); *State v. Robinson*, 4th Dist. Washington No. 16CA22, 2017-Ohio-8273, ¶ 34. This is consistent with the principle pronounced by the Supreme Court of Ohio that we should notice plain error "with the utmost caution, under exceptional circumstances". *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596 (2011).

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Part and Dissents in Part with Opinion.

For the Court

By: _____
        Marie Hoover, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**